ELLIE LEONARD *vs.* THE CHARTER OAK LIFE INSURANCE COMPANY.

First Judicial District, Hartford, January Term, 1895. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

The plaintiff was the beneficiary under a policy of life insurance issued by the defendant company. By its terms the company agreed to pay, in case of loss, $10,000, "deducting therefrom the amount of all unpaid notes given for premiums." After its issuance, the beneficiary and assured agreed with the company to scale it to $6,000, and that it should be "taken in all respects as if it had been originally issued for $6,000." After the death of the assured, the plaintiff brought suit against the company in New York, naming $10,000 as the sum demanded. Afterward the company became insolvent, and the receivers, to procure a withdrawal of that suit, agreed that "all defense to the merits shall be abandoned. Said claim may be proved in Connecticut, and is to be allowed subject to any offsets." *Held* that under this stipulation the amount to be allowed should be reduced to $6,000 in accordance with the scaling agreement, and also by the amount of unpaid premium-notes.

[Argued January 2d—decided February 8th, 1895.]

APPEAL from an order and decree of the Superior Court, *Shumway, J.,* of Hartford County, for alleged errors of the court in overruling a remonstrance of the plaintiff to the report of the committee appointed to hear and decide upon claims presented against the defendant. *No error.*

The case is sufficiently stated in the opinion.

*William F. Henney,* and *J. Aspinwall Hodge, Jr.,* of N. Y., for the appellant (plaintiff).

I. Under the stipulation the plaintiff's claim should be allowed at $10,000, with interest from March 1st, 1879. Manifestly the "claim" to be proved and "allowed" in Connecticut, is the claim as set forth in the complaint in the New York action. By the terms of the stipulation all defenses to the merits of the claim were abandoned; and if it be a fact that under the conditions of the policy a less sum

was due and payable to the plaintiff, yet that fact would clearly be a defense to the merits of the action, and by the terms of the stipulation not available before this tribunal.

The only condition imposed by the stipulation was that the claim should " be allowed subject to any offsets." Neither the premium-notes nor the scaling agreement were offsets, within the meaning of the stipulation. These premium-notes were a " defense to the merits of the claim," under the laws of New York. *Diehl* v. *Ins. Co.*, 1 Sandf., 257. The law and practice of the courts of New York allow a set-off or counterclaim to be set up in the answer, but it must be expressly stated that it is such, and affirmative relief must be asked on account of it. The New York courts have uniformly held that in " the absence of an allegation that a statement in the answer which is capable of being construed either as a defense or counterclaim, is one or the other, it will be regarded as a defense." *Bates* v. *Rosecrans*, 37 N. Y., 409; *Birke* v. *Thorne*, 44 Barb., 363; *Beers* v. *Waterbury*, 8 Bosw., 396. Inasmuch as the premium-notes were not set up in the answer at all, it is apparent that the claim stands where the pleadings in the New York action left it.

If the notes had been set up in the New York action they would not be offsets. 3 Bla. Com., 305; Barbour on Set-Off, 24; 2 Bouv. Law Dictionary, " Set-Off "; Set-Off, 4. Burr, 2221; 2 Par. on Contracts, 734, 774; *Steck* v. *C. F. & I. Co.*, 142 N. Y., 236, 242. The courts in Massachusetts and Connecticut are equally clear in their definitions of set-off. *Miner* v. *Walter*, 7 Mass. 237; *Gorham* v. *Bulkeley*, 49 Conn., 91; *Henry* v. *Butler*, 32 id., 140; *Meeker* v. *Thomas*, 43 id., 78. The premium-notes not having been set up in the answer in the action at law cannot now be allowed, in this equitable proceeding, against the plaintiff's claim. *Hendrickson* v. *Hinckley*, 17 How. (U. S.), 443.

The scaling agreement should not be allowed to affect the plaintiff's claim. It is clearly not a set-off, and if intended as a counterclaim, as before shown under the law and practice of New York, it should have been stated to be such in the pleadings. Both technically, and upon any fair inter-

pretation of language, this scaling agreement was one of the defenses set up in the answer as a defense to " the merits of the claim." This defense was " abandoned " by the terms of the stipulation, and cannot be interposed here.

The situation of the parties forbids that the court should listen for a moment to any attempt to reduce the amount of the claim below the sum of ten thousand dollars, with interest. If there has been an honest misunderstanding between the parties as to what the stipulation embraced, it is now too late to question the interpretation which plaintiff puts upon it. The stipulation is clearly open to the interpretation which plaintiff insists upon.

*Henry C. Robinson* and *Charles E. Gross*, for the appellee (defendant).

I. The plaintiff's attempted attachment in the New York action, five days after the appointment of the Connecticut receivers, was void and of no effect against them. *Relf* v. *Rundle*, 103 U. S., 222; *Rundle* v. *Life Ass. of America*, 10 Fed. Rep., 720; *Davis* v. *Life Ass'n of America*, 11 Fed. Rep., 781; *Taylor* v. *Life Ass'n of America*, 13 Fed. Rep., 493; *Railroad Co.* v. *Koontz*, 104 U. S., 5; *Bockover* v. *Life Ass'n of America*, 77 Va., 85. The Connecticut receivers, therefore, claimed that all other receivers of the company wherever appointed were ancillary and auxiliary to them. In this claim they have been uniformly sustained. *Parsons* v. *Charter Oak Life Ins. Co.*, 31 Fed. Rep., 305; *Fry* v. *Charter Oak Life Ins. Co.*, 31 Fed. Rep., 197; *Weingartner* v. *Charter Oak Life Ins. Co.*, 32 Fed. Rep., 314; *Fyler* v. *Charter Oak Life Ins. Co.*, Superior Court, Cook County, Ill., January, 1888; *Charter Oak Life Ins. Co.* v. *Woods*, U. S. Cir. Court, Indianapolis, 1888; *The People* v. *The Charter Oak Life Ins. Co.*, Supreme Court of N. Y., January, 1887.

Under these circumstances the stipulation for the discontinuance of the New York action, and the proof of the plaintiff's claim in Connecticut, was entered into; and the principal questions in this case turn upon the interpretation of that stipulation. It is evident that Miss Leonard lost

nothing by the transfer of her case to the Connecticut forum, but was greatly the gainer thereby. Her attachment was of no practical value, except to enable her to annoy the Connecticut receivers. It was not "issued" until four days after the title had vested in the New York receiver, who was but an auxiliary receiver to the Connecticut receivers. The abandonment of "all defense to the merits of the claim" did not in any way add to its amount. Her claim was upon the policy as it existed at the time of Austin's death. If she has any claim against the receivers, or against the estate in their hands, it is on the policy itself. That is the claim she would have had to make to support her suit in New York.

II. The premium-notes constitute mere limitations upon the amount of the plaintiff's claim under the policy. They are properly "offsets." The policy provides for the payment of "the said sum insured" * * * "deducting therefrom the amount of all unpaid notes given for premiums or loans by them on this policy, and all deferred premiums, if any, then existing." The balance as determined at the maturity of the policy is "the amount of the said insurance."

"Where the policy provides that any sum due thereon should be deducted, such note with interest should be deducted from the amount due in an action on the policy, though no counterclaim be made therefor." *Stepp* v. *National Life & Mut. Ass'n*, 23 Ins. L. J., 103. The plaintiff, therefore, shows no contract to pay anything more than the balance left after deducting these notes. The word "offset" is not a legal term, but it has a well defined meaning. Webster and the Century Dictionary give practically the same definition, "A sum, account, or value set off against another sum or account as an equivalent, countervail, or requital sum." Parties may agree as to what shall constitute "set-offs." Such agreements are sometime termed "contracts for credits." In such cases the agreements will be executed although the "set-off" may not technically be such. *Gary* v. *James*, 7 Ala., 640; *McDonald* v. *MacKenzie* (Or.), May 24, 1887. When the original contract provides for such specific and definite set-offs the plaintiff's "claim" is limited by such

"set-offs," and pleading such a "set-off" is only insisting upon the whole contract. It is not a defense to the merits of the claim.

Moreover, the premium-notes are properly set-offs. *Osgood v. De Groot*, 36 N. Y., 348 ; *Holbrook v. Receivers of Ins. Co.*, 6 Paige, 220. The law of "set-off," which controls, is Connecticut law. The stipulation provided for a presentation of the claim in Connecticut, and the law of "set-off" must be governed by that forum. This being a proceeding in equity, anything may be set off which is an equitable compensation. *Spurr v. Snyder*, 35 Conn., 172.

But it will be admitted that the parties intended something by the use of the word "offsets" in their stipulation. There was nothing to which it could apply except the scaling agreement and the premium-notes. The only way was to provide for them and then to deduct them from the claim when presented. This is the fair interpretation of the language, and the only interpretation which allows the claim to stand upon its merits as a policy claim against a mutual insurance company.

ANDREWS, C. J. The Charter Oak Life Insurance Company was put into the hands of receivers on the 22d day of September, 1886. And at a later date an order was duly passed, requiring the creditors of said corporation to present their claims to the receivers. On the 4th day of August, 1887, a committee was appointed to hear and decide upon all claims which had been or might thereafter be presented to the said receivers. Within the time limited, the present appellant presented to the receivers and to the said committee a claim against the said company predicated upon policy No. 36,775, dated December 7th, 1868, on the life of Alexander Austin, for the sum of $10,000, payable to Margaret Austin, wife of the said Alexander. On the 16th day of February, 1891, the said committee reported to the Superior Court for Hartford County (in which court all the said proceedings were then pending) that they had allowed the said claim in favor of the appellant to recover the amount of

$3,854.24 computed in this way : Original amount of policy $10,000 ; scaled by agreement in 1877 to $6,000 ; less amount of premium-notes $3,348 ; leaving due $2,652 ; interest on this sum from September 21st, 1886, $1,202.24, to be added, amounting in all to $3,854.24. The appellant appeared in the Superior Court and remonstrated against the acceptance of such report, a full hearing was had, the court made a finding of facts, accepted the report and rendered judgment accordingly. From that judgment this appeal is taken.

There are in effect but two reasons of appeal : That the court erred in sustaining the action of the committee in holding that the amount of the appellant's claim was only the sum due after deducting (1) the amount of the scaling agreement; and (2) the amount of the outstanding premium-notes.

In respect to the premium-notes we are very clear that there is no error. The policy of insurance under which the plaintiff claims, contains no promise to pay the sum of $10,000 which is the sum insured ; but only the sum insured, " deducting therefrom the amount of all unpaid notes given for premiums or loans by them on this policy, and all deferred premiums, if any, then existing." It certainly was not error for the committee or for the court to hold that the plaintiff could not recover a greater sum than the insurance company had, in any event, promised to pay. The amount of the premium-notes was a limitation on the sum named in the policy. That amount was one of the elements from which the sum due on the policy was to be ascertained. While these notes were outstanding, the sum of $10,000 was not, and could not become, due. The amount of these notes was not properly an offset; for an offset involves the idea of two independent amounts, one of which is to be set over against the other. But the amount of these notes operated by the terms of the policy itself as an extinguishment of so much of the amount named in the policy.

In the year 1877 Alexander Austin and Margaret Austin, both then in full life, entered into an agreement, called a scaling agreement, with the said insurance company, by

which upon sufficient consideration they agreed "that the amount originally payable by the terms of policy No. 36,775, * * * be, and the same is hereby, reduced two-fifths, to wit: from the amount of ten thousand dollars to the amount of six thousand dollars, and the said policy, when it matures, shall represent a claim only for said sum of six thousand dollars, together with such additions as may be hereafter made to said policy, and the remainder of the sum originally payable in and by said policy, and all rights of the insured in relation to the portion so released, are hereby fully and absolutely released, surrendered and discharged. * * * And it is further agreed that said original policy and this agreement shall be treated as one instrument, but that said original policy remains in full force in every respect, except as varied by this agreement, and said policy is to be considered and taken, in all respects, as if it had been originally issued for the sum of six thousand dollars."

Margaret Austin, to whom said policy was made payable, died in January, 1878, and by her will devised to said Alexander Austin all her interest in the same. Alexander Austin died on the 10th day of September, 1878. The present plaintiff claimed title to said policy by an assignment thereof to her from said Alexander, dated April 1st, 1878. Obviously she cannot possibly have any greater rights under that policy than the said Margaret and Alexander Austin had. As they would have been bound by the scaling agreement it is difficult to see why she is not also bound by it, and why the considerations applicable to the premium-notes do not have equal force as applied to this agreement: that strictly the amount scaled is not an offset, but an extinguishment *pro tanto* of the amount named in the original policy.

The plaintiff's counsel have, however, urged another view with a good deal of force and with great apparent confidence. It is, perhaps, just to them that their claims should be considered.

As already stated, the insurance company was put into the hands of receivers in this State on the 22d day of September, 1886. Ancillary receivers were appointed in the

State of New York on the next day (the 23d of September, 1886) and in various other States within a very few days. The plaintiff, who resided in New York City, had brought a suit there in 1879 on said policy. That suit had been suffered by her to remain pending in court until 1885, when an amended complaint was filed in it to which an answer had been duly made. On the 27th day of September, 1886, four days after the appointment of such receiver in New York, she obtained an order of attachment on the property of the company in that State and such order was served. Shortly prior to the 30th day of July, 1886, the receivers were endeavoring to have all the assets of said company transferred from other States to the State of Connecticut for a common distribution to its creditors and policy holders. Their attorney, being in New York, sought to have all the property in that State freed from the attachment of the plaintiff and from sundry other creditors, and had certain negotiations with the counsel of the plaintiff, the result of which was that a stipulation was entered into as follows : " Ellie Leonard vs. Charter Oak Life Ins. Co. In consideration of the discontinuance of the above entitled case now pending in the Supreme Court, County and State of New York, without costs, said entry to be made on the 30th or 31st day of July, 1888, it is hereby stipulated and agreed that all defense to the merits of the claim shall be abandoned. Said claim may be proved in Connecticut, and is to be allowed subject to any offsets and claims of conflicting claimants. New York, July 30th, 1888." This stipulation was signed by the receivers by their attorney. That case was discontinued that day, and the claim was presented to the receivers in Connecticut, as has been mentioned.

The plaintiff insists that because the receivers agreed by the stipulation to abandon all defense to the merits of her claim, and that the same was to be allowed subject to any offset and claims of conflicting claimants, they are precluded from any attempt to lessen her claim from the full sum named in the policy, by reason of the premium-notes or the scaling agreement. Her argument deals mainly with

the word "claim," the expression "defense to the merits," and the term "offset." She urges that the claim referred to in the stipulation was the one mentioned in the complaint in the action which was discontinued. It is not material to debate this point; we assume it to be true. The claim which the plaintiff made against the insurance company may very fairly be ascertained by reading the complaint in the light of the rules of pleading in the State of New York. These rules require a plaintiff to state correctly in the complaint the nature of the claim he makes and the circumstances out of which it arisee. But as a claim is, or may be, something very different from the amount of the claim, a plaintiff is not required to state that partial payments have been made. *Van Demark* v. *Van Demark,* 13 How. Pr., 372. Nor that offsets exist. *Giles* v. *Betz,* 15 Ab. Pr., 285; even though such payments have been made, or such offsets lawfully exist, and are perfectly well known to the plaintiff. The statement of these are left to the defendant. While, therefore, the plaintiff's complaint may be said to state the nature of her claim, it cannot be said to state any amount as being the amount of her claim. The amount of her claim as therein set forth was the sum for which the policy was issued, less any lawful abatements which the defendant should set up in its answer and show to exist. Her "claim" and the "merits of her claim" mean the same thing. Each expression includes all that she could of right recover in the action. *Blakely* v. *Frazier,* 11 S. Car., 134; *Dill* v. *Moon,* 14 id., 339. See, also, *St. John* v. *West,* 4 How. Pr., 331; *Rahn* v. *Gunnison,* 12 Wis., 528; *Oatman* v. *Bond,* 15 id., 25. By the terms of the stipulation the receivers abandoned all defenses to the merits of the plaintiff's claim. But they retained the right to insist on all offsets to it which might lawfully exist. It is very plain, then, that the parties understood that an offset was something different from, and not included in, a defense to the merits.

A defense to the merits of an action is one which denies that the plaintiff has any cause of action at all—one which, if sustained, bars the entire action. It is a defense to the

action. 1 Chitty's Pleading, 469; *Rahn* v. *Gunnison*, 12 Wis., 528; Gould's Pleading, Chap. VI. Of this kind there were three, perhaps four, set up in the answer to the plaintiff's action in New York: that the said Austin committed suicide; that proper proofs of death had never been made; that the plaintiff had no insurable interest in the life of the said Austin; and that the administrators of the said Austin owned the policy. These defenses were undoubtedly abandoned by the stipulation. An offset does not deny the existence or the merits of a claim. It is a contrary sum or claim, by which a given claim may be lessened or canceled. Century Dictionary. If the premium notes and the scaling agreement were not limitations upon the amount named in the policy, then they were claims of this kind. They were offsets. These were not abandoned, but were retained.

The plaintiff claims that the Superior Court erred in admitting the scaling agreement in evidence, and also in giving it the effect of reducing the amount due by the face of the policy; because of the proviso in that agreement that it was to be void in case a receiver was appointed.

It is found by the Superior Court, by its acceptance of the report of the committee appointed to pass upon the claims against the company, that this proviso was added " simply and only to provide for the possibility of a failure of the scaling plan then on hand, and had reference only to the immediate contingency of a receivership, and not to the possibilities of new insolvency proceedings " instituted years afterwards, and when the condition of the company might have been essentially changed. It is also found that " the plan of restoring the company to its standard of solvency by means of the scaling agreements became successful in 1878, and thereafter the company continued to do business as a mutual company for about eight years."

So far as concerns the objection to the admission of the scaling agreement in evidence, on account of this proviso, it is sufficient to say it was not made in the court below. The only ground of objection there taken was that the agreement was irrelevant and inadmissible in view of the

stipulation which resulted in the discontinuance of the New York action. So far as the objection now taken relates to the effect given to the scaling agreement by the Superior Court in ascertaining the amount of the plaintiff's claim, it is disposed of by the finding of the committee, as above quoted. There was no appointment of a receiver until eight or nine years after the agreement was executed, and the proviso in question was without effect as respects the rights of the parties to it. Those of the plaintiff, as has been already said, were no greater than those of the parties in whose favor the policy was drawn.

There is no error.

In this opinion the other judges concurred.