# New York Life Ins. Co. v. Scheuer, et al.

**Bill to Ascertain Amount Due on Insurance Policy.**

(Decided November 16, 1916.  Rehearing denied December 30, 1916.
73 South. 409.)

1. **Contracts; Law Governing.**—As to the nature, obligation, validity and interpretation of a contract, the general rule is that it is governed by the law of the place where made, unless the parties have in view some other law, or unless it is to be wholly performed in some other place, in which case, the other law, or the law of the place of performance will govern.

2. **Insurance; Modification of Policy; Validity.**—A provision of a policy, attempting to contradict or qualify the right of the parties to subject a policy loan agreement to the government of the laws of the state of New York is capable of being subsequently changed or modified by the parties.

3. **Same; Policy Loan Agreement; Law Governing.**—Where a policy was issued insured in Minnesota, and it provided that insured might obtain cash loans on the sole security of the policy and accumulations, on written request, after it had been in force two full years, in accordance with the company's existing form of policy loan agreement, and such loan agreement was executed about six years thereafter, while insured resided in the state of

Alabama, and the agreement provided that the application therefor was made at the insurer's home office in the city of New York, and that the loan agreement was made and delivered there, and that the principal and interest were payable there, and that the contract was made in the state of New York, and pursuant to the laws thereof, the loan agreement thus made, in the absence of any contradictory statement or provision in the policy contract, was a separate and distinct contract from that evidenced by the policy, and was governed by the laws of the state of New York by the express declaration of the parties.

4. Same; Discrimination; Computation of Reserve.—The policy in this case stated and examined, and it is held that insurer could not discriminate against policy holders borrowing on their own policies by a method of settlement allowing only three-fourths of the reserve so as to arbitrarily shorten the time of extended insurance, and hence where the full reserve would have extended the policy beyond the death of the insured, the assignee of the beneficiary could recover thereon.

APPEAL from Montgomery City Court.

Heard before Hon. GASTON GUNTER.

Bill by M. Scheuer and others, doing business as Scheuer & Wise, against the New York Life Insurance Company, to pay to orators the true amount due on said policy. Decree for complainants, and respondent appeals. Affirmed.

The purpose of the bill sufficiently appears from the opinion. The loan agreement is as follows:

In consideration of the premises the undersigned hereby agree as follows: (1) To pay said company interest on said loan at the rate of 5 per cent. per annum, payable in advance from this date to next anniversary of said policy, and annually in advance on said anniversary, and thereafter. (2) To pledge, and do hereby pledge, said policy as sole security for the payment of said loan and interest, and herewith deposit said policy with said company at its home office. (3) To pay said company said sum when due, with interest, reserving, however, the right to reclaim said policy by repayment, of said loan with interest at any time before due, said repayment to cancel this agreement without further action. (4) Said loan shall become due and payable (a) either if any premium on said policy or any interest on said loan is not paid on the date when due, in which event said pledge shall, without demand or notice of any kind, every demand and notice being hereby waived, be foreclosed by satisfying said loan in the manner provided in said policy; (b) or (1) on the maturity of the policy as a death claim or endowment; (2) on the surrender of the policy for a cash value; (3) on the selection of a discontinuing option at the end of any

dividend period.   In any such event the amount due on said loan shall be deducted from the sum to be paid or allowed under said policy.   (5) That as the amount of the loan available at any time includes any previous loan then unpaid, the execution of a subsequent loan agreement without further action cancels and annuls any previous agreement.

W. L. MARTIN, for appellant.   CHARLES L. HAROLD, for appellee.

McCLELLAN, J.—This cause involves a policy of insurance issued on the life of John Roscoe Stewart, now deceased.   The beneficiary named therein was Anna E. Stewart.   The appellees claim as assignees of the policy.   The amount of the insurance stated in the face of the policy was $2,000.   It is said to be of the class of policies called "standard accumulation class;" the accumulation period being fixed at 20 years.   The application therefor was made and taken in Duluth, Minn., and the policy was delivered in that city on to-wit, the 19th day of April, 1906.   The annual premiums, stipulated to be paid in advance for 10 years, were duly paid up to and including that due the 19th day of April, 1911.   In the policy it was provided:

"The insured may obtain cash loans on the sole security of this policy, on written request, at any time after it has been in force two full years, if premiums are duly paid to the anniversary of the insurance next succeeding the date when the loan may be obtained.   The insured shall pledge this policy and its accumulations as collateral security for such loans, in accordance with the terms contained in the company's then existing form of policy loan agreement.   The amount of loan available at any time is stated on the second page, and includes loans then unpaid. Interest will be at the rate of 5% per annum, payable in advance to the next anniversary, and annually in advance on that date and thereafter."

The policy also bore these stimulations:

"This policy is automatically nonforfeitable, as follows:

"First.—If any premium is not paid on or before the date when due, and if there is no indebtedness to the company.   The insurance will automatically continue from such due date as term insurance as follows, and no longer, namely: for 37 days if premiums have been paid for 3 months; for 45 days if for 6

months; for 53 days if for 9 months; for 60 days if for one year and less than two years; and for the period specified on the second page if premiums have been paid for two or more years.

"In lieu of such automatic term insurance, on the insured's written request within six months from such due date but not otherwise, this policy will be indorsed for the amount of paid-up insurance, if any, stated on the second page.

"Second.—If any premium or interest is not paid on or before the date when due, and if there is an indebtedness to the company.

"Insurance for the net amount that would have been payable as a death claim on said due date, will automatically continue from said due date as term insurance for such time as any excess of three-fourths of the reserve under this policy over such indebtedness will purchase at the age of the insured on said due date, according to the company's present published table of single premiums for term insurance, and no longer."

After paying the premium, the sixth in number, due April 19, 1911, and thereby paying for the insurance to April 19, 1912, the insured, while a resident of Alabama, borrowed from the company $458, executing therefor a "policy loan agreement" in the form provided by the company and assigning the policy as collateral security therefor. The report of the appeal will contain the body (except the sixth paragraph, which we quote below) of the instrument executed by the borrowing policy holder. The sixth paragraph of the "policy loan agreement" is this:

"That the application for said loan was made to said company at its home office in the city of New York, was accepted, the money paid by it, and this agreement made and delivered there; that said principal and interest are payable at said home office, and that this contract is made under and pursuant to the laws of the state of New York, the place of said contract being said home office of said company."

In the amended bill it is averred:

"Orators are informed and believe, and upon such information and belief aver, that in the foreclosure of the said policy pursuant to the terms of the said loan agreement the respondent lapsed the said policy before the death of the insured by the following method of calculation, viz.: The full legal reserve on the policy at the end of the sixth year, or on the 19th day of April, 1912, was the sum of $544, and three-fourths of the same

[New York Life Ins. Co. v. Scheuer, et al.]

was $408; and, the amount of the indebtedness secured thereby being $458 on said last-named date, it was reasoned that there was nothing left of the reserve with which to purchase the automatic extended insurance, and therefore the policy was for-feited. That in the table of extended term insurance on the second page of said policy, and of all policies of the same kind and age issued by respondent at the time, or about the time, of the issue of the policy here sued on, there was guaranteed to the insured automatic extended term insurance for 26 years and 8 months at the end of the policy's sixth year if six full annual premiums had been paid on the same, and provided there was no indebtedness to the company; that this period of automatic extension represents a policy value or reserve percentage materially in excess of three-fourths and materially in excess of the amount of said indebtedness to the respondent, and that if the respondent, in its calculation of the automatic insurance rights of the insured in said policy, had deducted and paid itself the amount of said indebtedness out of the said policy value, there would have been left sufficient policy value or reserve which, if applied by respondent to purchase, as a single premium, term insurance at the attained age of the insured under said policy, according to the single premium rates in force as of the date of said policy was issued, would have kept the same in force for the full amount thereof until after the death of the said insured. And orators aver it was the duty of respondent to thus account for the excess of the true policy value over the said indebtedness, and that the insured did not, nor did any one for him, exercise any option under said policy as therein allowed."

We appropriate this very satisfactory statement of the learned judge, sitting in equity, accurately outlining the case made by the amended bill:

"The seventh premium was not paid by the insured, who died a few months thereafter, viz. in December, 1912. The policy of insurance is alleged to have been canceled by the defendant in April, 1912, on account of the nonpayment of the premium. Complainants allege that the policy is still in force and effect, on account of the matters set out below: They say that the legal reserve, which the company is required by law to set apart, in April, 1912, amounted to, as they are informed and believe and so state, $544. They say, however, that the company canceled the policy of insurance under a provision by which a borrowing

insured forfeits one-fourth of the legal reserve so set apart. Complainants allege that by the terms of the policy, in the event that a premium is not paid by a nonborrower, the insurer engages to use the reserve in the purchase of automatic term insurance for the term that the legal reserve would for the age of the insured so purchase under the tables of the insurance company; that in case of an insured, who was a borrower and who failed to pay a premium, that automatic term insurance would be purchased by the amount in excess of the loan up to three-fourths of the legal reserve. In other words, that in case of a borrower three-fourths of the reserve only was available to the insured, and the loan was to be subtracted from such three-fourths of the reserve and the excess up to such three-fourths was to purchase term insurance; and the remaining one-fourth of the legal reserve was to be forfeited to the company. * * * Complainants allege that this provision in reference to a borrowing insured is a mere cloak on the part of the company to cover usury when an insured borrows under a loan agreement, and is void; that it is a plain discrimination in favor of a nonborrowing insured against a borrowing insured of the same class. The bill alleges that the loan was secured by the insured under a loan agreement of the insurer which made the contract of a loan a New York contract, to be governed by the laws of New York, and complainants thereupon set out the laws of New York in reference to usurious contracts, and allege, in effect, that upon an accounting it will be ascertained that the amount of one-fourth of the legal reserve forfeited and exacted by the company would be in excess of the interest allowed by the laws of the state of New York."

(1) A primary inquiry raised by the demurrer to the amended bill is this: Whether the nature, obligation, validity, and interpretation of the "policy loan agreement" is a contract affected with and governed by the laws of the state of New York; or, as to its nature, obligation, validity, and interpretation, is it a contract affected with and governed by the laws of the state of Alabama or of the state of Minnesota? "The general rule of law, * * * is that a contract is governed, as to its nature, obligation, validity, and interpretation, by the law of the place where * * * made, unless the parties have in view some other law, or unless it is to be wholly performed in some other place, in which case the law of place of performance, or the law which

both parties had in view, must govern."—*South. Ry. Co. v. Harrison*, 119 Ala. 539, 544, 24 South. 552, 557 (43 L. R. A. 385, 72 Am. St. Rep. 936) ; *Western Union Tel. Co. v. Favish*, 196 Ala. 4, 71 South. 183, 186; *Liverpool Steam Co. v. Phenix Ins. Co.*, 129 U. S. 397, 447-458, 9 Sup. Ct. 469, 32 L. Ed. 788.

(2, 3)  Unless the above-quoted recitals and stipulations, with respect to the law that should govern the cash loan thereby affected, of paragraph 6 of the "policy loan agreement," are to be taken as qualified, if not annulled, by the resultant effects of the facts that John Roscoe Stewart was a resident of the state of Minnesota when he applied for and received the delivery of this policy on his life and paid the initial, and, perhaps, some others of the annual premiums therefor—a policy that by its terms anticipated and assured the particular character of cash loan privilege or option of which the insured availed in April, 1911—and therefrom deducing the conclusions that the policy contract was a Minnesota contract, and that the loan agreement was but a subsidiary element of the policy contract, and, in consequence, itself a Minnesota contract, it is quite plain that the contract for the loan was, when made, and has continued to be, a New York contract, subject to the applicable laws of that state, and not a Minnesota contract, and certainly not an Alabama contract. The judgment of the Supreme Court of Missouri upon this question was invoked in *Head v. New York Life Ins. Co.*, 241 Mo. 403, 417, 418, 147 S. W. 832, though the insurance company there appears to have pressed the view for which complainant-appellee contends in the cause at bar.   That court said:   "It is next insisted by counsel for appellant that, conceding the contract expressed in the policy in suit is construed and governed by the laws of Missouri in vogue at the time it was formed, and that it was formed originally in Missouri, yet inasmuch as the present beneficiary in 1904 entered into a loan agreement whereby she borrowed from the defendant $2,270, and wherein she agreed that the policy in question should be governed and controlled by the laws of the state of New York, such loan agreement constituted a new and valid contract which precluded the present beneficiary from any other redress under the policy in suit than she would be entitled to if it had been settled in accordance with the laws of New York.   We cannot concur in this view.   It is not an open question in this state that all subsidiary contracts made by the parties to an insurance contract are within the con-

templation and purview of the original contract, and are not to be treated as independent agreements. This being so, they are inefficacious to alter, change, or modify the rights and obligations as they existed under the original contract of insurance.— *Burridge v. Ins. Co.* [211 Mo. 158, 109 S. W. 560] *supra; Smith v. Ins. Co.* [173 Mo. 329, 72 S. W. 935] *supra.*"

Through writ of error this decision of the Misouri court was brought under review of the Supreme Court of the United States. —*New York Life Insurance Co. v. Head,* 234 U. S. 149, 34 Sup. Ct. 879, s. c., 58 L. Ed. p. 1259 et seq. The Supreme Court, in reversing the judgment of the state court, Chief Justice WHITE writing, held that the statutes of Missouri were wholly ineffectual beyond the borders of that state, so as to impair and destroy the right of persons not its citizens to make a contract not operative within its jurisdiction and lawful in the state where the contract was made. In the concluding sentences of the opinion, it was said: "But before we come to direct the judgment of reversal, we briefly refer to another aspect of the subject, that is, the ruling of the court below as to the subsidiary nature of the loan agreement and its consequent control by the broader principle upon which its conclusion was really based. Of course under the view which we have taken of the case, that is, of the want of power of the State of Missouri because the contract of insurance was made within its jurisdiction to forever thereafter control by its laws all subsequent agreements made in other jurisdictions by persons not citizens of Missouri and lawful where made, that is, to sterotype, as it were, the will of the parties contracting in Missouri as of the date of the contract, it is unnecessary to consider whether the loan agreement was or was not subsidiary, but see on this subject *Leonard v. Charter Oak Life Ins. Co.,* 65 Conn. 529 [33 Atl. 511]; *Fireman's Ins. Co. v. Dunn,* 22 Ind. App. 332 [53 N. E. 251]; *S. S. White Dental Mfg. Co. v. Delaware Ins. Co.* (D. C.) 105 Fed. 642; 2 Wharton, Conflict of Laws, § 467g, and cases cited, and see note 63 L. R. A. 833."

At the above citation in 2 Wharton, this pertinent statement occurs: "The general principle seems to be that the assignment of a policy of insurance, or the benefit thereunder, is a contract distinct and separate from the original contract of insurance, and is governed by the laws of the place where it [the assignment] is made, without reference to the law governing the contract of insurance itself."

Cooley, in volume 1, p. 900, of his Briefs on the Law of Insurance, declares: "It is elementary that a proper modification of an insurance policy, as of every other contract, is valid and binding."

As we understand the opinion of the Supreme Court in the: *Head Case, supra,* the essential premise of the ruling made was, in accordance with the insurance company's contention, that a contract for a loan was made in New York. That it was there made, for the purpose indicated, by parties beyond the law power of the state of Missouri did not minify the broader pronouncement that a contract for a loan was made long subsequent to the creation of the contract of insurance itself. The conclusion from the opinion of the Chief Justice is not, we think, reflected upon by quotation made from the opinion. But, if standing alone,. this expression is susceptible of an interpretation contrary to what we have thought was a necessary deduction from the ruling made,. a reference to the text and decisions noted in the quotation leave, we think, no real doubt but that had it been deemed necessary the court would have accepted the doctrine of the text quoted from Wharton.

The insurance policy anticipated a cash loan upon it by the: insured as sole security. It carried a table wherefrom the annual loan .value could be accurately ascertained. The policy specified the terms of the loan that might be availed of by the insured. It further stipulated for the satisfaction thereof, in contingencies defined, by recourse to the reserve "under this, policy;" and, under conditions, it invested the borrowing insured with rights that projected beyond default in the payment of the annual premium and in the payment of the loan and the interest thereon. Notwithstanding these contractual assurances to the insured and these anticipatory contingent provisions for his advantage, there is nothing in the policy contract that required the insured to make a loan under the terms assured thereby. The option was his to make a loan consistent with those anticipatory provisions. Doubtless such provisions were intended to serve, and did serve, to induce the acceptance by the insured of the policy contract, but beyond this he was not obliged to take the loan its terms assured him if he desired to make it. The loan agreement, of a particular form used by the company, was mentioned in policy contract; but the policy contract nowhere indicates a purpose or an intent to effect a loan otherwise than

through a contract separately executed at a time, within the period fixed by the policy, chosen by the insured; which contract expressly recognized the right of the insured to discharge the loan by cash payment thereof.   The essence of a contract, the meeting of the minds of the parties, not being present in, or necessarily resulting from, the policy contract, the "policy loan agreement," executed approximately 6 years after the policy contract was perfected, whereby the policy was assigned, as upon a distinct consideration from that supporting the policy contract, to the insurer as collateral security, was a separate, distinct contract from that evidenced by the policy contract, was not only made in the state of New York, but was, by express declaration of the parties, subjected to the government, in respect of obligations and validity, of the laws of the state of New York. In so construing the "policy loan agreement" no conflict is instituted between any provision of the policy contract and the loan agreement touching the vital matter of the laws by which the loan agreement should be governed.   There is no provision of the policy contract attempting to contradict or to qualify the right of the parties to subject the loan agreement to the government of the laws of the state of New York; but, even had the policy contract so provided, it is elementary that the parties could subsequently change or modify that contract.—1 Cooley's Briefs on Ins. p. 900.

(4) Under the averments of the amended bill, considered in connection with the provisions of the policy and of the "policy loan agreement," the case made is, in all its legal aspects, that determined by the Court of Appeals of Kentucky in *Emig v. Mutual Benefit Life Ins. Co.*, 127 Ky. 588, 106 S. W. 230, 23 L. R. A. (N. S.) 828.   There may be found an excellent discussion of the fundamental, meritorious questions presented by this appeal, aside from the question to which we have hereinabove given consideration.   The doctrine of that decision is thus accurately, succinctly stated in the headnote in the Lawyers' Reports Annotated:   "An insurance company will not, in computing the amount of cash surrender value or the sum applicable to the purchase of extended insurance after default in payment of premiums, be permitted to discriminate against policy holders who have borrowed on their policies, by exacting more than the loan with legal interest, and therefore a method of settlement by which the amount to be deducted from the reserve applicable to the pur-

[Mobile County v. Linch.]

chase of extended insurance is ascertained by finding the sum which bears the same relation to such reserve as the amount borrowed bears to the cash surrender value, and thereby arbitrarily shortening the time of extended insurance, is invalid."

We approve and adopt the opinion in that case.

The applicable New York statutes are appropriately pleaded in the amended bill. The decision of the court below, sustaining the equity of the cause the appellee would assert and have vindicated, was well supported in the deliverance to which we have referred. The decree, from which this appeal was taken, overruling the demurrer to the amended bill, was well rendered. It is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.