(125 So. 217).

## FOURTH NAT. BANK OF MONTGOMERY v. WOOLFOLK. (3 Div. 892.)

Supreme Court of Alabama. Oct. 17, 1929.

Rehearing Denied Dec. 19, 1929.

Weil, Stakely & Cater, of Montgomery, for appellant.

THOMAS, J. The bill was that of interpleader by the assurer bringing in rival claimants, the beneficiary named in the policies, and the alleged assignee thereof. In neither of the policies did the assured reserve the right to change the beneficiary without the consent of the latter.

The full amount due on the policies was paid into the registry of the court, and there was order of discharge of the assurer. Marsh v. Mutual Life Insurance Co., 200 Ala. 438, 76 So. 370. The suit proceeded between the claimants of the fund. The contract of insurance, in so far as it concerned the company, was fully executed by the payment of the amount in court. The only question, therefore, is whether the contract of assignment will be enforced. Haase v. First National Bank of Anniston, 203 Ala. 624, 84 So. 761.

It is the general rule in this jurisdiction that, when an assignment of life insurance policy is executed in the state where assignor lived, the effect and validity of the assignment will be tested by the law of such state. Haase v. First National Bank of Anniston, supra. The authorities on the rule of lex loci are collected in J. R. Watkins Co. v. Hill, 214 Ala. 507, 108 So. 244. All the immediate parties to the attempted assignment lived in this state; the assignment was executed and delivered here, and under the laws of this state will be so measured. In New York Life Insurance Co. v. Scheuer, 198 Ala. 47, 54, 73 So. 409, the text of Wharton's Conflict of Laws is quoted, and the following from New York Life Ins. Co. v. Head, 234 U. S. 149, 34 S. Ct. 879, 883, 58 L. Ed. 1259, et seq.: "But before we come to direct the judgment of reversal, we briefly refer to another aspect of the subject, that is, the ruling of the court below as to the subsidiary nature of the loan agreement, and its consequent control by the broader principle upon which its conclusion was really based. Of course, under the view which we have taken of the case, that is, of the want of power of the State of Missouri, because the contract of insurance was made within its jurisdiction, to forever thereafter control by its laws all subsequent agreements made in other jurisdictions by persons not citizens of Missouri, and lawful where made, —that is, to stereotype, as it were, the will of the parties contracting in Missouri as of the date of the contract,—it is unnecessary to consider whether the loan agreement was or was not subsidiary; but see on this subject, Leonard v. Charter Oak L. Ins. Co., 65 Conn. 529, 33 A. 511; Fireman's Fund Ins. Co. v. Dunn, 22 Ind. App. 332, 53 N. E. 251; S. S. White Dental Mfg. Co. v. Delaware Ins. Co. [D. C.] 105 F. 642; 2 Wharton, Confl. L., § 467g, and cases cited; and see note in 63 L. R. A. 833." 2 Wharton, Conflict of Laws, § 467g; 2 Cooley's Briefs on Insurance, p. 1785; Manhattan Life Ins. Co. v. Cohen (Tex. Civ. App.) 139 S. W. 51; Russell v. Grigsby (C. C. A.) 168 F. 577; Robinson v. Hurst, 78 Md. 59, 26 A. 956, 20 L. R. A. 761, 44 Am. St. Rep. 266; Johnson v. Mutual Life Ins. Co., 180 Mass. 407, 62 N. E. 733, 63 L. R. A. 833; 5 C. J. 946; 25 Cyc. 780. The general rule is thus stated by Mr. Wharton, vol. 2 (3d Ed.) § 467g, p. 1033: "The general principle seems to be that the assignment of a policy of insurance, or the benefit thereunder, is a contract distinct and separate from the original contract of insurance, and is governed by the law of the place where it (the assignment) is made, without reference to the law governing the contract of insurance itself. Thus, the capacity of a married woman to assign a policy of insurance upon the life of her husband for her benefit, and the effect of such assignment to cut off her rights therein, have been referred to the law of the place where the assignment was made, although the contract of insurance was made in, and was governed by the law of, another state." Many authorities are cited by Mr. Cooley (vol. 2, Cooley's Briefs on Insurance (2d Ed.) p. 1785) under the heading of "Assignment of Life Insurance Policies"; and under the subheading of "What Law Governs" it is stated that "it is a general rule that the validity of an assignment must be determined by the law of the place of the assignment"—citing our decision Haase v. First National Bank, 203 Ala. 624, 84 So. 761.

In this controversy between residents of the state for the fund paid into court by the assured, the parties stand before the court to prosecute the questions of right between them under the same rules of law and procedure as if one had filed a bill against the other, predicated upon the same matter and for the same purpose. Fletcher's Eq. Pl. & Prac. (1902) p. 829, § 790. Upon the face of the policies the proceeds were the property of the named beneficiary, Mrs. Woolfolk, the appellee. The appellant bank claims said moneys by reason of an alleged assignment thereof executed in Alabama by the husband and alleged to have been signed by the wife, the appellee; the parties being at the time residents of this state.

The Wisconsin rule as to an assignment by the insured (without the consent of the beneficiary) who paid the premiums will not be applied here. The assignee is bound by the rule obtaining in this jurisdiction that such assignment would be void without the consent of the beneficiary. We may state that the evidence shows the contracts were taken in the state of Georgia, where insured and beneficiary resided before they removed to Alabama, and before the attempt to assign the same to the bank; that the rule in Georgia is not to enforce a foreign law in conflict with its own, and, unless a policy

issued in another state so provided, an assignment without the consent of the beneficiary has not been enforced in Georgia. Ulman, Magill & Jordan Woolen Co. v. Magill, 155 Ga. 555, 117 S. E. 657; Sally v. Bank, 150 Ga. 281, 103 S. E. 460; Perry v. Tweedy, 128 Ga. 402, 57 S. E. 782, 119 Am. St. Rep. 393, 11 Ann. Cas. 46.

And in the absence of positive law, the courts of each state determine how far comity requires the enforcement of contracts made beyond jurisdiction of such state. Flagg v. Baldwin, 38 N. J. Eq. 219, 224, 48 Am. Rep. 308. In the last-cited case the majority rule is declared to be: "An almost complete agreement exists upon the proposition that a contract valid where made will not be enforced by the courts of another country, if, in doing so, they must violate the plain public policy of the country whose jurisdiction is invoked to enforce it, or if its enforcement would be injurious to the interest or conflict with the operation of the public laws of that country. Story's Confl. Laws, § 244; 1 Addison Cont. § 241; Forbes v. Cochrane, 2 B. & C. 448; Grell v. Levy, 16 C. B. (N. S.) 73; Hope v. Hope, 8 De G., M. & G. 731; 2 Kent's Com. 475; Bank of Augusta v. Earle, 13 Pet. 519 [10 L. Ed. 274]; Ogden v. Saunders, 12 Wheat. 213 [6 L. Ed. 606]; Blanchard v. Russell, 13 Mass. 1 [7 Am. Dec. 106]." And in T. L. Brown & Co. v. Tishomingo Banking Co., 200 Ala. 613, 76 So. 971, Mr. Justice Sayre said of the rule of comity, invoked by counsel, that it will be enforced when it does not conflict with the rights of citizens of this state, citing Bacon v. Horne, 123 Pa. 452, 16 A. 794, 2 L. R. A. 355; Gilman v. Ketcham, 84 Wis. 60, 54 N. W. 395, 23 L. R. A. 52, 36 Am. St. Rep. 899.

We have indicated that the rule (and the rights of beneficiaries in insurance policies as to assignments) where the contract was taken by residents of Georgia, and that in Alabama, to which state the assured and beneficiary removed, became 'citizen, and sought to assign the policies to the Alabama corporation domiciled here, was different from that which obtains in Wisconsin. The written assent and concurrence of the named beneficiary in the policy not reserving the right of change of beneficiary is required to a valid and binding assignment of such policy as to affect the rights of the beneficiary. State Life Ins. Co. v. Westcott, 166 Ala. 192, 52 So. 344; T. L. Brown Co. v. Tishomingo Banking Co., supra; Haase v. Bank, supra.

We may further observe of the Wisconsin rule that the assured was required to have paid all the premiums as a condition to the unqualified right of assignment of the policy. Boehmer v. Kalk, 155 Wis. 156, 158, 144 N. W. 182, 49 L. R. A. (N. S.) 487. The evidence is uncontroverted that the beneficiary (appellee) paid a material part of the premiums on the instant policies. Hence the rule

may not be applicable, had the assignment been sought to be consummated in Wisconsin.

The trial court in effect held that the assignment was not subscribed by Mrs. Woolfolk. And in this we are not disposed to differ with the trial court under the conflict of several tendencies of the evidence. However, the decision was there primarily rested upon the suretyship of the wife for the husband's debts, if it be held or conceded that the assignment was subscribed by the wife. If she thereby directly or indirectly became a surety for the husband's debts, it was void. Such was held by the trial court to be the fact, and in this we likewise concur. It is illustrated by the note of Mr. Woolfolk of date of February 19, 1915, expressly declaring that the insurance policies named were held as collateral for debts of the husband to the bank; by the testimony of Mr. Rossell as to nonentry of payment or credits; the receipt of dividends on the policies, indorsement, and delivery of dividend checks of assurer to Mr. or Mrs. Woolfolk; the failure of credit of the value of the several plantations conveyed to the bank; and that of the proceeds of the large lot of cotton, the property of Woolfolk. That is to say, the disputable presumption of hypothecation of said insurance policies, aside from the express declarations to that effect in the note, is shown by the indorsement by the bank of the dividend checks received on that insurance, and delivery thereof to the Woolfolks; and failure of entry of credit on the bank's books of the insurance, when considered with all the other evidence, has not been overcome. It results from the foregoing that, as to this, the burden was shifted to the bank to go further with the evidence. Moreover, the evidence of Mrs. Woolfolk tends further to show loans and collaterals; payment by proceeds of uncontroverted collections out of other collaterals—as the Equitable policies. And it does not appear, from an inspection of the loose-leaf ledger of the bank before us, that the collection on the collateral of $15,000 in Equitable policies was entered as credit; nor the difference between the face value of these policies and premiums paid by the bank is not so credited to Woolfolk's debt. It may be insisted that this transaction with Equitable policies tended to dispute the recital in the original note of suretyship, and that these collaterals were not held and treated by the parties, as recited in the note. However, as to these material transactions and matters, the burden was upon the bank to explain its conduct thereof in the face of the foregoing positive evidence of hypothecation.

The rights of such beneficiary named in the policy were and are vested within the provisions of the policy and the law of Alabama entering therein and governing assignments. Morgan v. Prudential Ins. Co. of

America, 209 Ala. 110, 95 So. 355; Kilby Car & Foundry Co. v. Georgia Casualty Co., 209 Ala. 356, 96 So. 319; Empire Co. v. Landman, 213 Ala. 248, 104 So. 425; Royal Neighbors of Amer. v. Fortenberry, 214 Ala. 387, 107 So. 846. The wife then has such interest that required her assignment under the laws of this state.

■ The authorities are collected in Smith v. D. Rothschild & Co., 212 Ala. 276, 102 So. 206, to the effect that the wife cannot directly or indirectly become security for the debts of the husband; and in Van Derslice v. Merchants' Bank, 213 Ala. 237, 104 So. 663, that a wife can use her property to pay her husband's debts if the transaction does not amount to a suretyship. While the general constructions of insurance contracts do not differ, as to fundamental requirements, from other contracts (Yorkshire v. Gazis, 215 Ala. 564, 112 So. 154), yet the decisions have recognized a strict construction, when susceptible of construction, in favor of the assured and in aid of the protection sought to be afforded by and to the parties; that is, according to the intention of the parties as appears from the language employed. North River Ins. Co. of City of New York v. Waddell, 216 Ala. 55, 112 So. 336, 52 A. L. R. 838; Royal Ins. Co. v. Lubelsky, 86 Ala. 530, 5 So. 768. And here, the positive stipulations of the policies were for the wife as beneficiary, and the application for the insurance was made in her name or by her. It is true that, in the absence of proof on the point, an assured may be presumed to have paid the premiums on the policies. However, the evidence is uncontroverted that the wife made the applications, or they were made for her and in her name, and that she paid a part of the premiums on the instant policies, and thus she was beneficial owner thereof. As to the $15,000 policies in Equitable likewise described in Woolfolk's note as being held as collateral, she made no claims, nor to the proceeds thereof. On the death of the husband they were collected by the bank.

■ When all of the evidence is considered, we are impressed that the trial Court reached the right conclusion on the question of suretyship of the wife for the debts of the husband, and that, even if she did sign the transfer, it was illegal and void.

■ As to the insistence of laches, the wife's evidence tended to show her knowledge of the husband's action in assigning the policies without her assent at a period of about a year and a half or two before his death; that among some old papers she found the writing by him containing that statement by him. Being asked if the instrument was delivered to her by the husband, she replied that she found these papers and that in question "there later." The policies were applied for in her name and payable to the wife; that they were not taken by the bank as Mrs. Woolfolk's *absolute assignment* would appear in failure to credit the same; that it was collateral is positively stated in the Woolfolk note. We find no evidence that, at and after her knowledge of the alleged assignment by the husband in her name came to Mrs. Woolfolk, the former executive officials of the bank were dead. No required right of action by her existed during the life of Mr. Woolfolk. In waiting until after the assured's death, she was not guilty of laches, and **no** estoppel is raised against her. Meanwhile the bank's status and means of proof had not materially changed, so far as we can see. Mere silence or omission to assert a right does not constitute an estoppel, when resulting from ignorance of that right. Adams v. Birmingham Realty Co., 154 Ala. 457, 45 So. 891; Ashurst v. Ashurst, 119 Ala. 219, 229, 24 So. 760; Birmingham Sec. Co. v. Hodges, 193 Ala. 197, 68 So. 980; Lindsay v. Cooper, 94 Ala. 170, 11 So. 325, 16 L. R. A. 813, 33 Am. St. Rep. 105; Colbert v. Daniel, 32 Ala. 314; Patterson v. Weaver, 216 Ala. 686, 114 So. 301.

The original documents transmitted to this court have been inspected. We have considered the several phases of the evidence, and decline to disturb the decree of the lower court.

Affirmed.

SAYRE, BOULDIN, and BROWN, JJ., concur.

### On Rehearing.

THOMAS, J. ■ The statute providing for the taxing of 10 per cent as damages when there is affirmance on appeal of judgment rendered for money, whether debt or damages (section 6153, Code), does not apply here. This judgment was rendered against a claimant in interpleader, where the defendant has not the money.

The case of Caldwell v. U. S. F. & G. Co., 205 Ala. 463, 465, 466, 88 So. 574, is in point —there was supersedeas to hold up funds as here, and it was remarked that no summary judgment for damages could be rendered. This is the effect of Mrs. Woolfolk's application on point in rehearing. In the Caldwell Case, supra, it was held supersedeas bond required payment of interest on the fund withheld from distribution.

In Smith v. Alexander, 87 Ala. 387, 6 So. 51, the allowance of interest was denied as against the *claimant*, though charged and allowed against the holder of the fund pending the appeal. And in Dent v. Foy, 210 Ala. 161, 97 So. 627, the allowance of reasonable attorney's fees from which the appeal was taken, held that such a decree was not as that rendered in money, and within the influence of the above-cited statute. In this

holding there is analogy to the instant question.

The fact that on appeal a supersedeas bond was given under sections 6132–6136, Code, does not render the claimant intervening—and who is not in possession and who does not keep the money—subject to statutory penalty and the summary judgment therefor. See Caldwell v. U. S. F. & G. Co., supra, as to rights and remedies indicated.

The motion of appellee is denied.

SAYRE, BOULDIN, and BROWN, JJ., concur.