## Barner *v.* Lyter, Appellant.

*Insurance—Life insurance—Beneficiary—Assignment of policy.*

A policy of insurance provided that the insured might "change the beneficiaries at any time during the continuance of this policy by filing with the company a written request, accompanied by this policy, such change to take effect upon the indorsement of the same on the policy by the company." The beneficiaries were two minor children of the insured. The insured, when under sentence of death, executed a paper purporting to be an assignment of the policy in payment of, or as collateral security for, a pre-existing debt. The paper was delivered to the insurance company, but it was not accompanied by the policy, nor was any change of beneficiary indorsed on the policy, nor was it stated in the paper that it was impossible to produce the policy for the purpose of having such indorsement made. The paper was not addressed to the company, nor was the subject of change of beneficiary mentioned therein, nor did it appear in any way that the insured intended it to be filed with the company. *Held,* (1) that the burden of proving the intent of the insured to revoke the designation of his children as beneficiaries, rested on the claimant; (2) that an assumption by the company of a neutral position could not give the paper the effect of a revocation of the designation, unless it was so intended by the insured, and (3) that the evidence was insufficient to establish an intent to change the beneficiaries.

Argued March 14, 1906. Appeal, No. 7, March T., 1906, by defendant, from judgment of C. P. Perry Co., April T., 1903, No. 28, on issue to determine ownership to the proceeds of a policy of insurance in case of Walter A. Barner and Marion A. Barner, minor children of Elmer E. Barner, deceased, by their guardian, James M. Sharon, v. William H. Lyter. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

**436** · BARNER *v.* LYTER, Appellant.

Statement of Facts—Opinion of the Court. [31 Pa. Superior Ct.

Issue to determine ownership to the proceeds of a policy of insurance.   Before SHULL, P. J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in entering judgment for plaintiffs.

*J. N. Keller*, for appellant, cited : Stewart v. Lang, 37 Pa. 201; Allison's App., 77 Pa. 221 ; Lane v. Nelson, 167 Pa. 602; Parker v. Supply Co., 186 Pa. 294; Mergenthaler's App., 15 W. N. C. 441.

*James M. Barnett*, of *Barnett & Son*, for appellees, cited : Rymer v. Swick, 1 Lack. L. Reg. 430 ; McNeil v. United Order of Golden Cross, 131 Pa. 339 ; Central Bank v. Hume, 128 U. S. 195 (9 Sup. Ct. Repr. 41); Hewlett v. Home for Incurables, 74 Md. 350 (24 Atl. Repr. 324); Security Co. v. Life Ins. Co., 14 Pa. Dist. Rep. 554; Hunter v. Firemen's Relief, etc., Assn., 20 Pa. Superior Ct. 605 ; Vollman's App., 92 Pa. 50 ; Jinks v. Banner Lodge, 139 Pa. 414 ; Masonic Mut. Assn. v. Jones, 154 Pa. 107; Ellmaker v. Ellmaker, 4 Watts, 89 ; Auman v. Auman, 21 Pa. 343 ; Case v. Cushman, 3 W. & S. 544 ; Eberts v. Thompson, 113 Pa. 19 ; Foch's Est., 2 Woodw. 269 ; Gass's App., 73 Pa. 39 ; Nat. Bank of Brunswick v. Sixth Nat. Bank, 212 Pa. 238.

OPINION BY RICE, P. J., October 5, 1906 :

In 1899 Elmer E. Barner took a policy of life insurance in the Northwestern Mutual Life Insurance Company, in which the latter promised to pay the stipulated sum to the persons designated therein as beneficiaries, namely, his two minor children, Walter A. Barner and Marion A. Barner, " jointly or to the survivor, subject to the right of the insured to change the beneficiary or beneficiaries as hereinafter provided." The provision referred to, so far as material here, reads : " This policy is issued with the express understanding that the insured, subject to the rights of any assignee, . . . . may change the beneficiaries at any time during the continuance of this policy by filing with the company a written request, accompanied by this policy, such change to take effect upon the indorsement of the same on the policy by the company."

In 1901 the insured executed a paper which recited that he was then in prison under sentence of death, that while incarcerated he had previously delivered the policy to a member of the bar with the request that an assignment be drawn for execution by him "assigning all the right, title and interest therein or thereunder to his brother-in-law, William H. Lyter," as collateral security for loans and advancements, and that such assignment was executed by him in the full belief that the same was marked for the sole use and benefit of Lyter. The paper then proceeds as follows: "And I do hereby declare that it was my intention, at the time of the execution of the aforesaid assignment, as it is also my present intention and desire, that any and all moneys, which are due or which may hereafter become due under the aforesaid policy, shall be paid by the company unto my aforesaid brother-in-law for his sole use and benefit, in order that he may be reimbursed for the moneys paid and advanced for and on my account. . . . And for the purpose of expressing the manner in which the fund, which will become due under the policy aforesaid (the number of which is unknown to me, but is the only one I hold with the said company), I do hereby, for and in consideration of the moneys loaned by William H. Lyter to me, as well as moneys advanced by him for and on my account, sell, assign, transfer and set over unto my aforesaid brother-in-law, William H. Lyter, his heirs or assigns, all right, title and interest in and to the said policy, as well as all moneys which may become due and payable at my death for and on account thereof."

Within thirty days after its execution a duplicate of this paper was delivered to, and receipt thereof acknowledged by, the company. But the paper was not accompanied by the policy, nor was any change of beneficiary indorsed thereon, and it is worthy of notice in the construction of the paper that it was not stated therein that it was impossible to produce the policy for the purpose of having such indorsement made. But it is now alleged, and not denied, that at that time the policy was in the hands of the attorney above referred to, who declined and refused to surrender it, alleging that it had been assigned to him by the insured. By whom the demand upon him to surrender the policy was made, whether the insured or Lyter, does not appear.

After Barner's death, the beneficiaries by their guardian brought suit upon the policy, whereupon the company obtained leave to pay the money into court, and later an issue between them and Lyter was awarded "to determine the party entitled to receive the said fund." The court, in a well-considered opinion, held that no legal change of beneficiary was made by the insured, and therefore awarded the money to the children. No objection has been raised on this appeal as to the form of the issue, or as to the regularity of the proceedings which terminated in a judgment in favor of the plaintiffs in the issue, and we shall raise none. We assume that the parties assented to a disposition of the case by the court upon the facts averred in the pleadings.

Where the insured designates another person as beneficiary the right of the latter, as a rule, at once becomes vested so that it cannot be disturbed by assignment or will, or in any way without his consent, unless the right to make a new appointment is reserved by the terms of the policy itself, or by the regulations of the company subject to which the policy is issued, or by provisions of law: Richards on Insurance, sec. 36. This doctrine is supported by the great weight of authority: 2 May on Insurance, 4th ed., secs. 390, 391; Entwistle v. Travelers Ins. Co., 202 Pa. 141.

Allusion is made to the Act of April 15, 1868, P. L. 103, which provides that a policy upon the life of a person, taken for the benefit of his wife or children or dependent relative, "shall be vested in such wife or children or other relative, full and clear from all claims of the creditors of such person." As was said in Kulp v. March, 181 Pa. 627, this statute gives plausibility to the contention "that the policy of our law favors such transactions, even where the rights of creditors may be affected;" but we fully concur with the appellant's counsel in the conclusion that where the right to change the beneficiary is reserved by the terms of the policy, there is nothing in the act of 1868 to prevent him from substituting a creditor for a dependent child as beneficiary. Whether or not the right to change the beneficiary would be affected by the fact that the premiums were paid by him is a question we are not called upon to consider.

As to the right to object to an attempted change of benefici-

ary upon the ground that all the formalities prescribed by the policy have not been observed, a distinction is recognized between the company and the beneficiary originally named in the policy. Without undertaking to state a general rule that will apply to all cases, we think it safe to say that where the provision as to such formalities is exclusively for. the benefit of the company, and the company, waiving its right to raise the objection, takes the position of a stakeholder, such noncompliance is not necessarily fatal to the claim of the new beneficiary in an issue between him and the original beneficiary who was a mere volunteer. This, as we understand the case, is the doctrine of Penna. R. R. Co. v. Wolfe, 203 Pa. 269, in which it was held that when a member of a railroad beneficial association appointed his sister beneficiary in the manner provided by the rules of the association, and subsequently married after having made an antenuptial agreement by which, in consideration of the marriage, he agreed to make his wife the beneficiary instead of his sister, and died before making the substitution, the wife, and not the sister, was entitled to the fund which the association, waiving its rights, had paid into court. See also Donithen v. Independent Order of Foresters, 209 Pa. 170 ; Broadrick v. Broadrick, 25 Pa. Superior Ct. 225. The foregoing result was reached by applying the principle that equity will treat that as done which ought to be done ; but the point for which we cite the case is the recognition of the distinction between the association and the beneficiary as to the right to object that the rule of the association had not been complied with. It was thus expressed by the late Justice DEAN : "Nor does the failure to have the wife's name inserted as the beneficiary in the certificate or on the books of the association affect her right, as against a mere volunteer. The rule is for the protection of the association ; if it waives its rights or does not claim them, a third party cannot take its place. It would be conclusive in favor of the association ; it is only a fact tending to negative an antenuptial contract, as between the widow and sister." The reasoning of the opinion tends to this conclusion, that the provision of the policy under consideration, so far as it requires the production of the policy and the indorsement thereon of the change of beneficiary, is for the protection of the company, and may be waived by it.

If, therefore, the sole objection to the claim of Lyter, in the issue between him and the beneficiaries named in the policy, were the omission to have the alleged change of beneficiary indorsed on the policy, we do not say that it would be fatal.

But it is to be borne in mind, that the burden of proving the intent of the insured to revoke the designation of his children as beneficiaries rested on the claimant; the company's assumption of a neutral position cannot give the paper under which he claims the effect of a revocation of the designation unless it was so intended by the insured. That there are expressions in the paper which are consistent with, and, perhaps, tend to show such intention cannot be disputed, but they are also consistent with what the paper purports to be—an attempted assignment. It bears evidence on its face that it was not drawn hastily, nor by one unskilled in such matters. It was evidently drawn with care, and by one who knew the technical meaning and effect of the words employed. The requisition of the policy as to change of beneficiary is very simple, and it seems highly probable that some allusion would have been made to it, if that was the purpose intended to be accomplished by the paper. But none of its language purports to be a request to be filed with the company for such change; while great care is exhibited in expressing the intent of the insured as to the former assignment, and to prevent its operation, the subject of change of beneficiary is not mentioned; the paper is not addressed to the company; nor does it affirmatively appear in the paper itself, or aliunde, that the insured intended it to be filed with the company; nor is it distinctly alleged that the duplicate was forwarded to the company by his subsequent direction. In conclusion, neither the paper itself, nor the action of the insured with reference thereto, exhibits a clear intent on his part to exercise the right reserved by the terms of the policy to have his creditor substituted, eo instanti, for his children as beneficiary, or to do more than to transfer such right as he could by a bare assignment. And, in the absence of such intent, it is impossible to give an assignment of the policy, in payment of or as collateral security for a pre-existing debt, the effect of a change of beneficiary in the mode provided by the policy, upon the ground that equity looks upon that as done which ought to be done. In strict law the right to the fund

is in the beneficiaries; and as it has not been clearly shown that the assignee has a superior right in equity, the fund was properly awarded to the former.

Judgment affirmed.