### In re ANGER BAKING CO., Inc.

(Circuit Court of Appeals, Second Circuit. November 9, 1915.)

No. 18.

1. PLEDGES ⬚19—LIABILITY SECURED—CONSTRUCTION OF CONTRACT.

A corporation borrowed money on the guaranty of a surety company, and contracted to indemnify the latter against liability on the note and for all costs and expenses incurred in connection therewith. It violated the terms of its agreement by drawing a part of the proceeds from the bank without the assent of the surety company, and being threatened with suit it agreed to replace the same, and to secure such agreement pledged

⬚For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

certain notes as collateral. *Held* that, construing the two agreements as one contract, the collateral secured also the repayment of the cost and expense incurred by the surety company.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 58–63; Dec. Dig. &#9758;19.]

2. PLEDGES &#9758;9—CONSIDERATION.

The fact that the collateral was due at a future date, together with forbearance of suit, amounted to an agreement to forbear at least until maturity of the collateral notes, and constituted a good consideration for the pledge.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. § 20; Dec. Dig. &#9758;9.]

3. BANKRUPTCY &#9758;323—PROOF OF NOTES BY PLEDGEE—AMOUNT PROVABLE.

A pledgee of notes of a bankrupt may prove for their full amount, although the debt secured is less, where necessary to cover its claim.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 503, 505, 513; Dec. Dig. &#9758;323.]

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of the Anger Baking Company, Incorporated. On petition by E. B. Walden, trustee, and others, to revise an order allowing claim of the Southern Surety Company. Affirmed.

C. L. Greenhall, of New York City, for appellants.

A. F. Chapin, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. [1] October 4, 1913, Heffron & Co. borrowed $10,000 of M. M. Hart, Incorporated, for which it gave its note payable in 30 days. The lender required as a condition of the loan that the Southern Surety Company should guarantee the payment of the note at maturity which it did on an application of Heffron & Co. containing the following article:

"(5) That the undersigned [Heffron & Co.] will at all times indemnify and keep indemnified the company and save it harmless from and against all claims, demands, liabilities, costs, charges, and expenses of every kind or nature, which shall at any time be made or which it shall at any time sustain or incur, and will pay over, reimburse, and make good to the company, its successors and assigns, all sums and amounts of money necessary to meet every claim, demand, liability, cost, charge, expense, suit, order, decree, judgment, and adjudication against it by reason of the execution of the bond or undertaking herein applied for."

At the same time Heffron & Co. and the Surety Company entered into another written contract by which the former agreed to deposit the $10,000 in a bank to be drawn out only upon checks countersigned by the Surety Company. The money was so deposited in the Marine National Bank. Shortly afterwards Heffron & Co. asked permission of the Surety Company to transfer the deposit to the Buffalo Loan & Trust Company on the same terms. The agent of the Surety Company countersigned the check to enable this change to be made and gave it to Heffron, who deposited the money without requiring the countersignature of the Surety Company and drew out $6,000 of it.

As soon as this came to the knowledge of the Surety Company, it threatened Heffron & Co. with suit unless the money were immediately replaced. Heffron & Co. said they could not raise the cash, but would give the Surety Company some A--1 paper as collateral if it would forbear to sue. Thereupon they gave the note of the Anger Baking Company for $4,056.80 falling due several months after Heffron & Co.'s note to M. M. Hart, Incorporated, together with other collateral which proved worthless. When the Heffron & Co. note became due it was protested for nonpayment, and was thereupon paid by the Surety Company, which within a few days received the amount, less $1.25 from Heffron & Co. It is stipulated that the Surety Company was put to an expense of $1,000 for legal services and other expenses in connection with the withdrawal of the $6,000.

The Anger Company having been adjudicated a bankrupt, the Surety Company filed proof of claim upon the note. The trustee objected to the proof on the ground that the proceeds of the note had been wrongfully diverted by Heffron & Co. and that the Surety Company was not a bona fide holder for value; also on the ground that under no cirumstances could it prove for more than $1,000, the actual amount of its claim. The referee and District Judge sustained the proof, and this is a petition to revise the order.

The first question is whether the collateral was meant to secure only the return of the $6,000, or also the expenses to which the Surety Company was put in connection therewith. The two agreements made between the parties constitute but one contract. If the Surety Company had sued, it would certainly have been not only for the $6,000, but also for the expenses. We think the collateral was given to secure the payment of its whole claim, which included both accounts.

[2] The next objection is that, as the Surety Company did not give up its existing claim against Heffron & Co. for the $6,000, there was no consideration moving from the Surety Company. The agreement to forbear suit for any fixed time would have been concededly a good consideration. Such an agreement could not be inferred from the mere fact that the collateral was payable at a future date, because that would not have prevented the Surety Company from suing immediately (Cary v. White, 52 N. Y. 138, 144); but we think that the taking of collateral due at a future date, together with the Surety Company's agreement to forbear, amounts to an agreement to forbear, at least until the maturity of the collateral note. This constituted a consideration.

[3] Finally it is said that the Surety Company should only have been allowed to prove on the note up to the amount of its claim, viz., $1,000. We think it could properly prove for the whole amount of the note, if necessary to cover its claim, as is the case.

The order is affirmed.