## TAYLOR v. SOUTHERN BANK & TRUST CO.

6 Div. 211.

Supreme Court of Alabama.

Oct. 5, 1933.

Rehearing Denied Dec. 1, 1933.

J. K. Taylor and Chas. W. Greer, both of Birmingham, for appellant.

566

H. H. Grooms and Coleman, Spain, Stewart & Davies, all of Birmingham, for appellee.

GARDNER, Justice.

Plaintiff, the widow of James A. Taylor, was named the beneficiary in two policies of insurance on his life, bearing date March 5, 1928, aggregating $15,000. Insured paid the premiums on these policies except as to the quarterly premiums falling due December 5, 1929, and subsequent thereto. As to said premium due December 5, 1929, insured executed a note to defendant bank for a loan of $265.20, and out of the proceeds said quarterly premiums were paid. Subsequent premiums were paid by defendant. The insured died on June 26, 1930.

Contemporaneously with the execution of the note above referred to, the insured, joined by plaintiff, his wife and beneficiary, executed an assignment to the defendant of each of said policies in full compliance with the policy provisions regarding such assignments. Each assignment contained the provision that "the interest of the assignee in the policy hereby assigned is limited to said assignee's valid, pecuniary claim against the assignor existing at the time of any settlement of the policy, the remaining proceeds of said policy, if any, being unaffected by

this assignment." The policy provisions disclose there was no cash surrender value to either policy at the time of the assignment or at the date of the death of the insured. The policies being thus assigned were delivered to the defendant and both original and duplicate of these assignments were filed in the general office of the insurer in accordance with the terms of the policy. At the time of the execution of these assignments, the insured was indebted to the bank in the sum of $66,825.75, which was subsequently increased to $68,362.63 at the time of his death.

Following the specific language above quoted from these assignments, the interest of the bank, as assignee, was measured by the "pecuniary claim against the assignor existing at the time of any settlement of the policy," and suffices to refute the insistence of the plaintiff that the assignment was merely to secure the note of $265.20. The pecuniary claim existing against the assignor (the insured) at the time of his death was in excess of $68,000, and, if the above noted language is to be taken at its face value, the assignments likewise secured this latter sum. It will be here so considered.

■ Proof of loss was made by defendant, upon the death of the insured, and the full amount due on the policies was paid to it, and plaintiff seeks to recover this sum of defendant. The debt was that of the husband, the insured, and we attach no importance to the fact that the wife joined in the assignment. Fourth National Bank v. Woolfolk, 220 Ala. 344, 125 So. 217.

Plaintiff rests her claim in the main upon the proposition that to affect her rights a change of beneficiary was essential; and that these assignments cannot be so construed. Authorities are cited tending to sustain this contention, among them Muller v. Penn Mut. Life Ins. Co., 62 Colo. 245, 161 P. 148; Sullivan v. Maroney, 76 N. J. Eq. 104, 73 A. 842; Anderson v. Broad Street Nat. Bank, 90 N. J. Eq. 78, 105 A. 599; Barner v. Lyter, 31 Pa. Super. Ct. 435; Douglass v. Equitable Life Assur. Soc., 150 La. 519, 90 So. 834; Johnson v. New York Life Ins. Co., 56 Colo. 178, 138 P. 414, L. R. A. 1916A, 868. These authorities we have carefully considered, but think they are out of harmony with the logic of our own decisions and therefore unsafe as guides to be followed here.

As we view the question, the matter of change of beneficiary and assignment of the policies are two separate and distinct things. As said in Mut. Benefit Life Ins. Co. v. Swett (C. C. A.) 222 F. 200, 205, Ann. Cas. 1917B, 298, "An assignment is the transfer by one of his right or interest in property to another. * * * The power to change the beneficiary is the power to appoint."

"It is the general rule that an ordinary life policy, containing no right in the insured to change the beneficiary, cannot be assigned without the consent of the beneficiary. The delivery of the policy vests an interest in the beneficiary, which no act of the company or insured can divest. * * *

"If, however, the right to change the beneficiary or to assign the policy is reserved, the insured may assign the policy at will." 2 Cooley's Briefs on Ins. (2d Ed.) pp. 1801 and 1805; 6 Couch on Ins., p. 5232.

■ A life insurance policy is, of course, assignable as any other chose of action (Missouri State Life Ins. Co. v. Robertson Banking Co., 223 Ala. 13, 134 So. 25; 37 Corpus Juris 422), and may be pledged by delivery to secure a debt (37 Corpus Juris 428), or may be assigned as collateral security (Keeble v. Jones, 187 Ala. 207, 65 So. 384).

In the instant case, the policies were assigned in strict compliance with the provisions therein contained, and the policies expressly further provided that the insured may change the beneficiary. The stipulations therein relating to the assignment, as well as change of the beneficiary, are as follows:

"If there be no written assignment of this policy on file with the company, the insured may, while this policy is in force, designate a new beneficiary, by filing written notice thereof at the general office of the company, accompanied by this policy for suitable endorsement. Such change shall take effect upon endorsement of the same on the policy by the company. If any beneficiary shall die before the insured, the interest of such beneficiary shall vest in the insured unless otherwise provided herein.

"The insured may, without the consent of the beneficiary, receive every benefit, exercise every right and enjoy every privilege conferred on the insured by the policy.

"No assignment of this policy shall be binding upon the company unless filed in duplicate at the general office on a form provided by the company, one copy to be retained by the company and the other to be returned. The company assumes no responsibility for the validity of any assignment."

Each assignment contained the provision that:

"The interest of the assignee in the policy hereby assigned is limited to said assignee's valid, pecuniary claim against the assignor existing at the time of any settlement of the policy, the remaining proceeds of said policy, if any, being unaffected by this assignment."

It is clear, we think, that the policies themselves disclose that the right to make a change as to the beneficiary and the right to assign are separate and distinct, and, indeed, the language indicates so far as the insurer is concerned a right to fail to recog-

nize the change of beneficiary if there is on file a written assignment of the policy.

So far as the right to change the beneficiary is concerned, the policy not only reserves this right but expresses in broad language the control of the insured in that regard. "The insured may, without the consent of the beneficiary, receive every benefit, exercise every right and enjoy every privilege conferred on the insured by the policy." The policy further discloses that the assignment is as security for the valid pecuniary claim against the assignor existing at the time of the settlement of the policy and is expressly limited thereto as shown by the concluding words, "The remaining proceeds of said policy, if any, being unaffected by this assignment."

No change of beneficiary was contemplated, nor was there necessity therefor. If the amount of the policy exceeded the indebtedness for which it was pledged, this provision was intended to preserve the surplus for the beneficiary named. Under the uniform decisions of this court, the right to change the beneficiary being reserved, the beneficiary had no vested right, but only an expectancy. West End Savings Bank v. Goodwin, 223 Ala. 185, 135 So. 161, 162; McDonald v. McDonald, 212 Ala. 317, 102 So. 38, 36 A. L. R. 761; Id., 215 Ala. 179, 110 So. 291; Summers v. Summers, 218 Ala. 420, 118 So. 912; Barnett v. Boyd, 224 Ala. 309, 140 So. 375.

And we have held (illustrative of the expectant character of such an interest) that fraud or undue influence inducing the insured to change the beneficiary, the right to change being reserved, does not give the first beneficiary any right to claim the proceeds of the policy. Metropolitan Life Ins. Co. v. Bramlett, 224 Ala. 473, 140 So. 752; Barnett v. Boyd, supra; Summers v. Summers, supra.

The language of the opinion in Fourth National Bank v. Woolfolk, supra, laying stress on the lack of such a reservation in the policy there considered, clearly indicates a different conclusion, had such reservation been found in the policy.

■ Some of the authorities relied upon by plaintiff lay stress upon the necessity of strict compliance with the policy provisions as to a change of beneficiary as being absolutely essential, and, if these stipulations are not met, no change effected, notwithstanding the intention of the insured to the contrary, and his effort to that end.

Our decisions take a broader view, and are to the effect that such policy provisions are for the benefit of the insurer and may be waived, and are waived by an interpleader (Missouri State Life Ins. Co. v. Robertson Banking Co., 223 Ala. 13, 134 So. 25), or by a failure to take advantage thereof (Whitman v. Whitman, 225 Ala. 113, 142 So. 413).

But, as we have previously observed, the insured made no attempt to change the beneficiary. He was only exercising a right expressly recognized in the policy, which gave him full control thereof, a control which was as complete as if he himself had been named the beneficiary. We find ourselves in harmony with the discussion of this question as found in Mutual Benefit Life Ins. Co. v. Swett (C. C. A.) 222 F. 200, 204, Ann. Cas. 1917B, 298, from which opinion we take the following excerpts:

"As the policy to Swett stipulated that he might, on his written request of the company for its appropriate indorsement on the policy, change the beneficiary, his wife did not acquire a permanent or vested interest in it. The existence of such an interest during her husband's lifetime was made impossible by the control over the contract of insurance given to him, independent of her will. Her right was inchoate, a mere expectancy during his lifetime, dependent on the will and pleasure of her husband as holder of the policy, and could not vest until his death happened with the policy unchanged. His control over the policy was, subject to its terms, as complete as if he himself had been the beneficiary. Denver Life Ins. Co. v. Crane, 19 Colo. App. 191, 200, 73 P. 875. The wife had no vested interest which she could assign until the death of her husband—no assignable or transferable interest in the policy until some right of action on it accrued in her favor. May on Ins., § 399 F; Sabin v. Phinney, 134 N. Y. 423, 428, 31 N. E. 1087, 30 Am. St. Rep. 681. As she had but a mere expectancy at the time of the assignment, she did not become surety for her husband, because the absolute right to assign the policy was lodged in him. Having no property right in the policy (Golden Star Fraternity v. Martin, 59 N. J. Law, 207, 216, 35 A. 908), she pledged nothing for his debts; nor was it necessary that she should receive a consideration for her joining with him in the assignment in order to bind her, because in so doing she parted with nothing of appreciable value. The bank's rights were as secure without her joinder as with it.

"The ownership of the policy was not in her, but in her husband. The policy recognizes that ownership of it may be acquired by assignment. The bank by the assignment became its qualified owner, to the full extent necessary to satisfy the husband's indebtedness from its proceeds. * * *

"Whether, on account of Swett's indebtedness to the bank exceeding the amount of the policy, the assignment was in effect a change of beneficiary, is not in our judgment important to determine. However, the assignment of a policy and a change of beneficiary are not the same, but different, things. An assignment is the transfer by one of his right or interest in property to another. It rests

upon contract, and, generally speaking, the delivery of the thing assigned is necessary to its validity. The power to change the beneficiary is the power to appoint. The power of appointment must be exercised in the manner agreed upon in the contract of insurance. Niblack, Benefit Societies & Acc. Ins. (2d Ed.) § 173. Swett made an assignment of the policy. He did not exercise or attempt to exercise the power to appoint another beneficiary. His wife still remained such. She takes nothing as beneficiary, but that is because the debts, which the policy was assigned to secure, consumed the entire proceeds of the policy."

And speaking of a policy with like reservations as here involved, and the rights of the named beneficiary as against the assignee thereof, the court in Rawls v. Penn Mutual Life Ins. Co. (C. C. A.) 253 F. 725, 727, made use of the following line of reasoning, which appears most cogent:

"The insured at all times prior to his death had complete domination and control of the policies by reason of his reserved right at any time to change the beneficiary. * * *

"The insured clearly might have changed the beneficiary to himself, or to his estate, without the consent of, or even notice to, the beneficiary, and might then have made the assignment, or granted the lien to the company, and thereafter reinstated his wife as beneficiary. Had he gone through this circumlocution, her interest would undoubtedly thereby have been made subject to the assignment. What he might have done by indirection and circumlocution, he had the right to do by direct action."

The case of Bank of Belzoni v. Hodges, 132 Miss. 238, 96 So. 97, is here directly in point, and fully sustains the conclusion of the court below. Some additional authorities to like effect may be noted: Merchants' Bank v. Garard, 158 Ga. 867, 124 S. E. 715, 38 A. L. R. 102; Martin v. Stubbings, 126 Ill. 387, 18 N. E. 657, 9 Am. St. Rep. 620; Atlantic Mut. Life Ins. Co. v. Gannon, 179 Mass. 291, 60 N. E. 933; First National Bank v. Security Mut. Life Ins. Co., 283 Mo. 336, 222 S. W. 832; Mutual Life Ins. Co. v. Twyman, 122 Ky. 513, 92 S. W. 335, 97 S. W. 391, 121 Am. St. Rep. 471. But we pretermit further discussion.

■■ The named beneficiary had no vested right, only an expectancy. The insured had the right to assign the policy as security for his indebtedness and reserved full control to that end. Whatever interest, therefore, the beneficiary had was subject to the valid exercise of this control, and her rights were of consequence subordinate to the assignments. The debt, being in excess of the amount of the policies, left nothing for the beneficiary. Had there been a surplus, her rights as the named beneficiary would have been unaffected. There was no occasion for a change of beneficiary. The insured had the right to change the beneficiary. He also had the right of assignment. To secure the creditor he chose the latter course. If plaintiff's contention be correct, and a change of beneficiary was necessary to the validity of this transaction, then the right to assign means nothing and is of no value.

While this court may not have had occasion to treat this precise question, yet we think the logic of our decision leads unerringly to the conclusion that the trial court reached a correct result, and the judgment rendered will therefore be here affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.

### On Rehearing.

GARDNER, Justice.

Upon application for rehearing appellant's counsel have elaborated upon the question first above considered relating to the matter of indebtedness secured by the assignments, with citation of authorities [among them St. John v. O'Connel, 7 Port. 466; In re Haynesworth (D. C.) 34 F.(2d) 334; St. Lucie County Bank & Trust Co. v. Aylin, 94 Fla. 528, 114 So. 438; Gillet v. Bank of America, 160 N. Y. 549, 55 N. E. 292; Armstrong v. Chemical National Bank (C. C.) 41 F. 234, 6 L. R. A. 226; Turner et al. v. Bank of Mountain View (Mo. App.) 19 S.W.(2d) 19; note 68 A. L. R. 912; In re Anger Baking Co. (C. C. A.) 228 F. 181; Kelter v. American Bankers' Finance Co., 306 Pa. 483, 160 A. 127, 82 A. L. R. 999], all of which have been examined with care. Each of them is readily distinguishable from the instant case. Illustrative of some differentiating features is the Florida case of St. Lucie County Bank & Trust Co. v. Aylin, supra, where the language of the contract as to the collateral security was construed as having application to liabilities arising from transactions between the parties thereto, and not those arising out of a purchase by the bank from third parties, and wherein the court followed the New York court in the analogous case of Gillet v. Bank of America, supra.

■■ But a review here of each case would extend this opinion to undue length. Some of them state the principle, recognized, of course, by all the authorities, that in the absence of an agreement to the contrary or of facts from which an agreement may be presumed, a pledgee may not apply collateral for one debt in discharge of another debt, or, as stated in Phillips v. Thompson, 2 Johns. Ch. (N. Y.) 418, 7 Am. Dec. 535, a security given for a specific purpose is to be applied to that purpose alone and not another. And it is also true, as insisted by appellant, that the question is one of intention of the parties as determined from the terms of the contract of pledge, the subject-matter and course of

dealing to which it relates. 49 Corpus Juris 920.

But, as stated in the above noted text of 49 Corpus Juris, "Where the intention is clear and contravenes no rule of law and sufficient words are used to arrive at the intention, it should be enforced irrespective of technical rules of construction."

■ Appellant's contention, forcibly presented in brief of counsel, is in substance and effect, that the mere fact the insured borrowed of the bank the sum of $265.20 for premium payment, executing his note therefor, and contemporaneously the assignments of the policies were executed by himself and wife, suffices to disclose that the policies were assigned as collateral for that particular loan and nothing more. But the argument overlooks other pertinent facts.

Subsequent premiums were paid by the bank, and, as noted in the original opinion, the policies were without any cash surrender value. Insured was indebted to the bank at that time in excess of $66,000. Insured executed and delivered to the bank the assignments and the policies, the execution of the assignments being duly acknowledged. The record is silent as to who prepared the assignments, though the indications point to the fact that they were on blank forms furnished by the company. The statement in the record is merely that they were executed by the insured and by him delivered to the bank. Clearly under these circumstances, the language of the assignments, whatever rule of construction be applied, is not to be given so restrictive a meaning as contended by appellant. Such a construction would do violence to the plain unambiguous language of the assignment contract, which should here suffice for all purposes. The interest of the bank was measured by the "pecuniary claim against the assignor existing at the time of any settlement of the policy." Perhaps the discussion could be strengthened by a detailed consideration of the meaning of the words "pecuniary" and "claim," which are broad in their scope. But we consider this unnecessary. Certainly there is nothing in this language that would justify a conclusion the interest of the bank in the assignment of these two policies, aggregating $15,000, was to be limited to the sum of $265.20, that day advanced. The plain language of the contract is to the contrary.

It embraces the assignee's pecuniary claim against the assignor existing at the time of the settlement of the policy, not when the note for $265.20 became due (a fact not here appearing), nor even such claim then existing; but such as might be in existence when the policy was settled. True, the language employed is not in the wording of authorities cited by appellant, as in Merchants' National Bank v. Demere, 92 Ga. 735, 19 S. E. 38, 39, "any general balance due or to become due," or "any other liability," as in Cross v. Brown (R. I.) 33 A. 370, 371, or "any other unsecured liability, or liabilities," as in Wilson v. Carothers (Ky.) 43 S. W. 684, or "this or any other obligation due or to become due" as in Boney & Harper Milling Co. v. J. C. Stevenson Co., 161 N. C. 510, 77 S. E. 676. But the words used are broad and comprehensive, and are to be properly construed as equally capable of conveying a like thought and purpose. But we forego further comment.

We are persuaded the original opinion is correct, and sufficiently disposed of the question; but out of deference to the earnest insistence of counsel for appellant, we have thought it proper to further extend the discussion.

The application for rehearing will be denied.

Application overruled.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.