**Sarah Minerva ODUM, as Administratrix Ad Colligendum of the Estate of James Edmund Odum, deceased, Appellant,**

v.

**PENN MUTUAL LIFE INSURANCE COMPANY, Appellee.**

No. 18564.

United States Court of Appeals
Fifth Circuit.

March 22, 1961.

Erle Pettus, Jr., Birmingham, Ala., for appellant.

Andrew J. Thomas, Birmingham, Ala., Moore, Thomas, Taliaferro, Forman & Burr, Birmingham, Ala., of counsel, for appellee.

E. T. Brown, Jr., Drayton T. Scott, Birmingham, Ala., Cabaniss & Johnston, Birmingham, Ala., of counsel, for appellee William Thomas Odum.

Before RIVES and WISDOM, Circuit Judges, and WRIGHT, District Judge.

RIVES, Circuit Judge.

This litigation concerns the proper disposition of the proceeds of a $40,000 life insurance policy issued by appellee Penn Mutual on the life of James Edmund Odum. On February 14, 1958, James Odum filed with Penn Mutual an Owner and Beneficiary Designation, naming William Odum (brother of James Odum) as owner and various other Odums as beneficiaries.[1] The owner named in the policy possessed the exclusive right to change the beneficiary, and "to assign, transfer or agree to any modification of this policy or any interest therein." Although nominally the owner, the evidence establishes that William Odum never saw the policy prior to his brother's death, that all premiums were paid by James Odum, and that William's only connection with the policy was that his brother "put it in" his name.

In the Spring of 1958, James Odum found himself in perilous financial straits. The quarterly premium on the policy was due on May 17, 1958, and if unpaid by July 3, 1958, the policy would lapse. Because James Odum had attempted suicide in May, 1958, and thus his chances for obtaining new insurance were nil, it was very important that the policy not be permitted to lapse. In addition to the imminent expiration of the policy, one of James Odum's creditors was pressing him for security on an outstanding loan. On June 11, 1958, his insurance agent informed James Odum by letter that the policy in issue "is owned by you and can be assigned with no trouble * * *." On June 14, 1958, James Odum attempted to assign the policy to his creditor, Steiner Brothers Bank. This assignment was returned by Penn Mutual's Birmingham Agency to the insured because it was not executed by his brother, William Odum, who was the "owner" of the policy. In this same letter James Odum was advised that in order for the policy not to lapse, "it will be necessary for him [William Odum] to sign the lien note to charge the balance of the May 17th, 1958, quarterly premium to the policy."[2] Shortly after receiving this letter, the insured's wife, Sarah, placed a long-distance call to the brother, William Odum, at his home in Panama City, Florida. The substance of the phone conversation was in dispute at the trial. Mrs. Odum testified:

"A. I told him that Ed's creditors were pushing terribly, that the bank particularly was very anxious about their note, Wallace [Penn Mutual General Agent in Birmingham] was calling about this premium needing to be paid.

"Q. Yes, that's the one that they sent the lien note on. A. Yes. Of course, we didn't have the money to cover the note at the bank and the bank was nervous because it had been in the paper about Ed trying to kill himself, and I had assigned every policy that I had to every bank in town, and I didn't have any more policies, and this was the only one

---

1. This beneficiary designation allotted ⅛ of the policy proceeds to Patricia Odum, former wife of James Odum; ⅖ to James Odum, Jr., and ⅖ to Patrick Odum, sons of the insured; ⅛ to William Odum, the insured's brother, and ⅛ to the executors or administrators of the insured.

2. The named owner of the policy had the power to execute a lien note which charged the balance of the premium to the accumulated loan value of the policy.

that was left. And they had to have the policy assigned to Ed, I mean Kit [William Odum] had to assign the policy back to Ed so Ed could use it at the bank.

"Q. You didn't say anything to him about the only thing he had to do was sign the lien note to pay the premium on this policy, you didn't tell him that, did you? A. I don't know that I explained that because I was more interested in holding the bank off of Ed's neck than I was getting the policy paid. But of course the policy had to be paid to hold the bank off.

\*    \*    \*    \*    \*

"A. He told me to sign any paper that was necessary or do anything that was necessary to help Ed."

On the other hand, William Odum testified:

"Q. Now, I will ask you if in those conversations with Sarah she did not tell you that Ed had made an assignment to secure a $5,000.00 note at Steiner Brothers, and the assignment had been turned down by the insurance company on the ground that you were the owner of the policy? A. No.

"Q. Didn't she ask you to make an assignment or authorize them to make an assignment so that they could assign it to the Steiner Brothers Bank, this particular policy? A. No."

Subsequent to this conversation, there was executed a document entitled "Absolute Assignment," which purported to transfer the ownership of the policy to James Odum. At the same time, James Odum signed a lien note as owner charging the amount owed on the premium against the policy. The Absolute Assignment bore the signature of William Odum, which signature was written by James Odum supposedly acting under au-

thority granted to him by his brother in the telephone conversation. The district judge believed the resolution of the question of whether William Odum authorized the execution of this Absolute Assignment was unnecessary in reaching his decision.[3]

The document entitled "Absolute Assignment" was a form imprinted with the name of Penn Mutual Life Insurance Company. The document provided, in part:

"Absolute Assignment
"Policy No. 4,196,752
"The Penn Mutual Life Insurance Company
"Life of James Edmund Odum

"If this instrument is executed by the Insured alone, or by the Insured and not all the beneficiaries of record, and the right to change the beneficiary is reserved to the Insured alone, then I, the insured, hereby change the beneficiary under this policy and designate as beneficiary myself or my executors or administrators.

"For Value Received, each of the undersigned hereby assigns all his right, title and interest in each policy named above to
"James Edmund Odum, the insured,
    "(State complete address of Assignee)
and agrees that:

\*    \*    \*    \*    \*

"2. The assignee or his legal representative, may at any time, in his own name and for his own benefit and without the joinder of any one, exercise all privileges of ownership in the policy including any loan or surrender right.

\*    \*    \*    \*    \*

"Signed the 3 of July, 1958, at Bgham, State of Ala.

---

**3.** "The Court deems it unnecessary to its decision at the present stage of this action and, therefore, makes no finding, as to the controverted question of whether

the execution of said Absolute Assignment was authorized by the. defendant, William Thomas Odum."

"Witnesses Present: Sign in duplicate before two witnesses. The witnesses should be persons who will be available to prove the signature if necessary.

"X/s/William Thomas
Odum   (Seal)
"William Thomas
Odum
.............  (Seal)
.............  (Seal)

"X /s/ Sarah Odum

.................,
................."

One original and one duplicate copy of the Absolute Assignment were transmitted to appellee's general agency in Birmingham, and thence to appellee's home office in Philadelphia. The duplicate was returned to the Birmingham office, from which it was forwarded to the office of the insured. After his death, the duplicate copy of the Absolute Assignment was found in a file in the office of the insured. Stapled to the face of this copy of the Absolute Assignment was a small form, printed in red, reading as follows:

"Notice to Policyowner

"This assignment has changed the payee of any death benefit of each policy to the executors or administrators of the insured or annuitant. If it is desired to have such benefit paid to some other payee, a designation form will be prepared by the company upon request."[4]

Subsequent to the death of the insured, appellee prepared to make payments of the policy proceeds to the beneficiaries designated in the Owner and Beneficiary Designation of February 14, 1958. See note 1, supra. Before these checks were delivered, Sarah Odum, named administratrix of the estate of the now deceased James Odum, and a Mr. Jones, one of decedent's executors, visited the appellee's general agency in Birmingham and claimed the proceeds of the policy for the estate on authority of the Absolute Assignment and the attached "Notice to Policyowner." The claimants being unable to resolve their differences, appellee insurer filed a bill of interpleader in the court below, pursuant to 28 U.S.C.A. § 1335.

The insurer named as defendants Sarah Odum, administratrix of the estate of James Odum; the beneficiaries under the Owner and Beneficiary Designation of February 14, 1958; and the Steiner Brothers Bank. Penn Mutual alleged that it was ready, willing and able to pay to the person or persons, legally entitled to receive the same, the proceeds of the policy and that it was a mere stakeholder and had no interest in the controversy. Defendants answered, setting forth the basis of their respective claims, and also contesting plaintiff-insurer's right to interpleader. They alleged generally that the insurer had incurred an independent liability to each or all of them, and that, because of this independent liability, the insurer could not maintain interpleader. The District Court held a hearing on the issue of independent liability, and decided that the insurer had not incurred such independent liability as would bar its maintaining the interpleader action. The District Court ordered the plaintiff-insurer discharged from all liability on the policy, it having paid the proceeds into court, and permanently enjoined the defendants from pursuing any legal action against the insurer on the basis of the policy.

In the District Court and here appellee argues that the Federal Interpleader Act of 1936 abolished the requirement that the interpleader plaintiff must establish

4. At trial there was a dispute as to whether it had been proved that this small form had been affixed to the Absolute Assignment by an agent of appellee Penn Mutual. The District Court ruled:
  "The Court deems it unnecessary to its decision at the present stage of this action and, therefore, makes no finding, as to whether said 'Notice to Policyowner' was attached to said duplicate copy of said Absolute Assignment by an agent of the plaintiff."

that it has incurred no independent liability to any of the defendants before it can maintain the action. Because of the facts of the case and its posture before us, we pretermit discussion and resolution of this point. For purposes of this case, we assume the District Court was correct in holding that if defendants could have established that plaintiff-insurer was independently liable to one or more of them for the sum of the proceeds of this policy, the interpleader action should have been dismissed. For dismissal to be justified, we think the trial judge must find that there is a genuine issue of material fact relative to the existence of the alleged independent liability. Dismissal might be proper in such a case because in the pursuit of a claim which is the basis of the allegation of independent liability the proponent would be entitled, upon timely demand, to a trial by jury. He is not to be deprived of this right to a jury trial by having his claim heard and resolved by the court in preliminary interpleader proceedings. Where, however, the case is not made out sufficiently to create a genuine issue of material fact as to the existence of independent liability, the proponent is not deprived of his jury trial when the court resolves it as a preliminary matter in interpleader proceedings.[5] Moreover, in the case at bar there is no question that the District Court had jurisdiction to hear and determine the claim of independent liability, since it appears that Penn Mutual is a Pennsylvania corporation, with its principal place of business in Philadelphia and Sarah Odum is a citizen of Alabama.[6]

The only appellant before us, and thus the only proponent of independent liability here, is Sarah Odum as administratrix of the estate of James Odum. She claims that Penn Mutual is independently liable to the estate on theories of contract, tort and estoppel.

The contract claim may be disposed of in short order. Appellant's position is that the effect of the filing of the Absolute Assignment and its acceptance by Penn Mutual, as evidenced by the "Notice to Policyowner" and by Penn Mutual's honoring the lien note signed by James Odum for the May premium, was to revoke the Owner and Beneficiary Designation of February 14, 1958, and change the beneficiary to the estate of James Odum. If, arguendo, that much be taken as true, then Penn Mutual cannot also be liable *ex contractu* to the February 14, 1958 beneficiaries. Either the beneficiary was changed or it was not. On a claim sounding in contract, either one party or the other must prevail.[7] The question of whether the Absolute Assignment changed the beneficiary as a matter of contract law will properly be resolved in the part of the interpleading proceeding in which the claimants themselves vie for the fund in the possession of the court.

■ As a corollary to her contract claim, appellant argues that if the Absolute Assignment is held to have changed the beneficiary to the estate, Penn Mutual may be independently liable to the beneficiaries named in the February 14, 1958 designation on another theory. Her argument here is that these beneficiaries could not be deprived of that status except by a change of beneficiary executed in accordance with the procedures written in the policy. The difficulty with this argument is that Alabama law clearly provides that "limitations in the policy as to the method of changing the bene-

5. In such a case in ordinary civil litigation, the opponent of the claim of independent liability would be entitled to summary judgment. See F.R.Civ.P. 56, 28 U.S.C.A.

6. We need not pass on the question of whether the court below would have had "ancillary jurisdiction" to determine this claim even in the absence of diversity of citizenship of the contending parties. See 65 Yale L.J. 715, 718–719 (1956).

7. See American Motorists Ins. Co. v. Oakley, Sup.Ct., 1939, 172 Misc. 319, 14 N.Y.S.2d 883; Supreme Commandery United Order of the Golden Cross of the World v. Merrick, 163 Mass. 374, 40 N.E. 183, 184 (Holmes, J.).

ficiary are solely for the benefit of the company."[8] Thus, only the company can claim that the beneficiary was not changed because the procedures outlined in the policy were not followed.

Discussion of the next two theories—tort and estoppel—assumes that the beneficiaries designated on February 14, 1958 were not changed by the Absolute Assignment as a matter of contract law. Thus, appellant maintains that those defendants will be entitled to recover on contract, while the insurer is independently liable to her in tort or because of estoppel.[9]

■ Appellant argues that, by virtue of its attaching the "Notice to Policyowner" to the duplicate copy of the Absolute Assignment which was returned to the insured, the insurer is estopped to deny that the proceeds of the policy are payable to the "executors or administrators of the insured" as stated in said "Notice to Policyowner." In Alabama, however, the doctrine of estoppel is protective only and is not effective, by itself, to create a new cause of action.

> "The principle of estoppel is protective only and is invoked as a shield and in the absence of primary right arising from contract or right in the ownership, use or possession of property is not applicable. It is not a weapon of offense or aggression. To create a primary right to recover for loss or damage to property insured against loss or damage all the elements of a binding contract are essential."[10]

Appellant's claim of independent liability in tort is grounded on the theory of "innocent misrepresentation." Again this claim is based on the statement in the "Notice to Policyowner" that the death benefits under the policy were payable to the "executors or administrators of the insured."

Section 108 of Title 7 of the Alabama Code of 1958 provides:

> "§ 108. *Misrepresentations.*—Misrepresentations of a material fact, made wilfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or *if made by mistake and innocently, and acted on by the opposite party, constitute legal fraud.*" (Emphasis supplied.)

Appellant claims that the innocent misrepresentation that the policy proceeds were payable to the estate was "acted on" within the meaning of the statute, when the insured failed to make a formal request of Change of Beneficiary to the "executors or administrators of the insured." She argues in her brief that "by direction of the Notice to Policyowner no such request was necessary by the insured unless he desired a payee of the death benefits other than his executors or administrators. His failure to make any such request * * * proves reliance by him on the representation contained in the Notice to Policyowner."

■ The burden of proving that the insured relied on the misrepresentation to his detriment was on appellant in the District Court.[11] We think she failed to sustain this burden. True, the deceased insured did not attempt to change the beneficiary designation after receiving the "Notice to Policyowner." We fail to see, however, wherein the deceased insured was proved to have relied on this representation to his detriment. The purposes which were sought to be ac-

---

**8.** Hutchins v. Whatley, 1946, 248 Ala. 449, 28 So.2d 191, 193; Phillips v. Phillips, 1940, 240 Ala. 148, 198 So. 132, 134. "The named beneficiary had no vested right, only an expectancy." Taylor v. Southern Bank & Trust Co., 1933, 227 Ala. 565, 151 So. 357, 361.

**9.** See American Motorist Insurance Co. v. Oakley, Sup.Ct., 1939, 172 Misc. 319, 14 N.Y.S.2d 883.

**10.** Union Marine & General Ins. Co. v. Holmes, 1947, 249 Ala. 294, 31 So.2d 303, 306. See Penn Mutual Life Insurance Co. of Philadelphia v. Mallory, 255 Ala. 256, 50 So.2d 740, 744 (1951).

**11.** See Bynum v. Rucker, 1938, 235 Ala. 353, 179 So. 241.

complished by the Absolute Assignment, i. e., the execution of the lien note to cover payment of the premium due and the validation of the assignment of the policy to Steiner Brothers Bank could be accomplished without changing the beneficiaries named in the February 14, 1958 designation. Conversely, the same results could have been accomplished with a change in the beneficiary to the estate. There is no evidence in the record to prove that the deceased insured was dissatisfied with the designation of February 14, 1958, or wanted the beneficiary changed to his estate. The appellant has not met her burden of proving detrimental reliance on the misrepresentation.

Since no genuine issue of material fact was presented by the evidence on the asserted grounds for independent liability of the insurer to one or more of the interpleader defendants and the claims failed as a matter of law, the court below properly sustained the right of the insurer to maintain interpleader pursuant to 28 U.S.C.A. § 1335.

The judgment of the District Court is Affirmed.